EDWARD B. SANNER et al.

v.

THE UNION DRAINAGE DISTRICT.

Opinion filed October 24, 1898.

1. DRAINAGE—granting petition at first meeting does not effect organization. An order entered by drainage commissioners granting the prayer of a petition for combined drainage at the first meeting called as required by section 13 of the Farm Drainage act, (Laws of 1885, p. 81,) does not legally organize the district, as the power of the commissioners at such meeting is confined to determining the sufficiency of the petition as a preliminary to organization in the manner prescribed in sections 14 and 15 of the same act.

2. SAME—statute makes no provision for reviewing action of commissioners in organizing district. Section 24 of the Farm Drainage act, which provides for an appeal to three supervisors of the county from the decision of drainage commissioners respecting the classification of lands, has no relation to the action of the commissioners in organizing the district or in finding in favor of the petition at the first meeting; nor does the statute provide any method for having such action reviewed.

3. SAME—land owners have a right to be heard on matters pertaining to organization. Land owners should be heard upon the questions whether the petition has been presented, whether their lands are involved in the drainage system, and upon all matters pertaining to organization, and may object to a consideration of the petition upon the ground that no notice has been given to them or to others, and may insist that the annexation of land shall be valid as a whole.

4. SAME—commissioners cannot include lands of persons not indicated in the petition as owners. Drainage commissioners have no power to include in a combined system of drainage the lands of persons not signers of the petition nor named in the petition as owners of any of the land therein described, and an objection based on such an inclusion may be made by the parties themselves or any other land owner affected by the proceeding.

5. CERTIORARI—when certiorari will lie to test legality of commissioners' action. The common law writ of certiorari lies to test the legality of the action of drainage commissioners in determining a controversy arising during the proceedings for the organization of a district, where such action appears from the record of its proceedings, and no method for reviewing the same is provided by statute, and the writ is applied for before the proposed district becomes a legal entity carrying out the purposes of its existence. (Lees v. Drainage Comrs. 125 Ill. 47, distinguished.)

Sanner v. Union Drainage District, 64 Ill. App. 62, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

MOULTON, CHAFEE & HEADEN, for appellants.

HAMLIN & KELLY, and A. M. CRAFTON, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On October 19, 1893, a petition was filed with the town clerk of Penn township, Shelby county, Illinois, addressed to the drainage commissioners of the town of Penn, in Shelby county, and of the town of Milan, in Macon county, State of Illinois, reciting that about 320 acres of land in Macon county and about 1310 acres in Shelby county had theretofore been connected by ditches, which formed a continuous line of branches draining through the same outlet, constructed by the voluntary action of the owners, and setting forth the petitioners and land owners in the proposed district, and that repairs and improvements are necessary but cannot be made by voluntary agreement, and praying for the organization of a union drainage district, with boundaries embracing the lands in the petition described. This petition being filed with the town clerk, he complied with the provisions of the statute by selecting three commissioners for said district from the commissioners of highways of the two towns, taking a part from each town, and notified them of their selection and when they should meet.

At a meeting on the 31st of October, 1893, in accordance with the notification by the town clerk, the commissioners entered an order, in which it was recited that they had examined the petition, together with all the papers in the case, and having heard the testimony of witnesses duly sworn according to law, together with statements of all interested persons appearing, found the petition

contained the signatures of three adult persons owning land in the proposed district, and the affidavits of two credible signers of the petition in support thereof; that they further found the land mentioned in said petition required a combined system of drainage, and that it was then connected by ditches forming a continuous line and branches through the same outlet, and was so connected by voluntary action of the owners; that a large amount of drainage, repairs and improvements was necessary, and that the organization of a district would be beneficial, and found for the petitioners and granted the prayer of the petition.    This order was made in accordance with the provisions of paragraph 87 of the Drainage act (Hurd's Stat. of 1889, p. 563,) but also went further and granted the prayer of the petition.    At that meeting the commissioners adjourned until November 9, 1893, at which time they reported that they had been upon the lands and had personally examined the same; that they had excluded certain lands which were included in the petition for the proposed district and included certain lands which were not included in the petition, and defined the boundaries and classified the lands.    They subsequently appointed an engineer, who made a report, which was received and accepted and filed with the town clerk. Notice was given that the commissioners had made an assessment for benefits and classified the land in the district on a graduated scale, and had made an order, under paragraph 89 of the Drainage act, to organize the district, making a map thereof showing the boundaries, which map was duly filed.    Thereupon E. B. Sanner, Jacob Sanner and F. M. Sanders appealed to three supervisors. Three supervisors were summoned from Shelby county to hear the appeal.    Objection being made that one of the supervisors should have been called from Macon county, the supervisors were of the opinion the point was well taken and declined to consider the appeal for that reason. Thereupon the clerk summoned two supervisors from

Shelby county and one from Macon county to hear the appeal. These three met, when one of the appellants objected because they had not been convened in time, and this objection was held good and the board dissolved.

The appellants filed in the circuit court of Shelby county their petition for a common law writ of *certiorari* to bring before the court the record and proceedings, and upon a hearing the petition was dismissed and the writ quashed. Appellants prosecuted an appeal to the Appellate Court for the Third District, where the judgment of the circuit court was affirmed. This appeal is prosecuted from that judgment of affirmance.

Counsel say in their brief, "We simply seek to have this court examine and pass upon the acts of this corporation after October 31, when the organization was had." By the provisions of paragraph 87 of the Drainage act the commissioners must meet at the time and place mentioned in the notice, and the clerk shall lay before them the petition and papers in the case, and they must ascertain whether the petition contains the signatures of three adult persons owning land in the district, and whether they are the owners of more than one-third of the land in the district. Under the findings to be made under that section they only determine with reference to whether the petition has been signed as required, and determine, in fact, with reference to the material statements therein, having power to administer oaths and examine witnesses and decide controverted questions. They must make a statement of their findings, to be filed with the papers in the case under the above paragraph. In their meeting of October 31 the commissioners made all these findings, and then added, "We therefore find for said petitioners and grant the prayer of said petition, and order an adjournment until November 9, 1893." The contention of appellants is that these proceedings organized the district legally, and subsequent proceedings, it is urged, are illegal and void. By paragraph 88 of the Drainage

act, if the commissioners shall find in favor of the peti-
tioners, as provided in paragraph 87, they shall adjourn
their meeting, and in the meantime go upon the lands
and personally examine the same. By the provisions of
paragraph 89, at such an adjourned meeting they shall
enter an order of record organizing the drainage district.
The commissioners had no power to organize a drainage
district at the first meeting, and the effect of the order
entered by them did not constitute the organization of
the district.

It appears that the petition sets forth the names of
the owners of land embraced in the proposed drainage
district, and their post-office addresses, so far as known.
The names of fifteen land owners are therein given. No-
tice was duly posted, in which a copy of the petition was
inserted, showing that it would be heard on the 31st day
of October, 1893. On that day the commissioners, after
finding the facts as to the sufficiency of the petition un-
der the statute and entering an order to that effect, ad-
journed to November 9, at eleven o'clock A. M. Of the
fifteen land owners whose names are given in the petition
one is the estate of C. Barber, deceased. On the organi-
zation of the district on the 9th day of November certain
lands of J. S. Crawford were included in the district, but
he was not named as a lot or land owner. Certain lands
of George W. Waite were excluded and certain other lands
included other than those mentioned in the petition, un-
der the order organizing the district. Certain lands of
Walter Parks were included in the district, but he was not
mentioned. Certain lands of E. B. Sanner were excluded
from the district. The order of October 31 does not find
that any persons attached their names to the petition or
asked to have their land included within the district. The
land of John S. Crawford, Walter Parks and George W.
Waite seems to have been included in the district by the
action of the commissioners without their request and
without notice to them. Eighteen land owners are men-

tioned as owning land within the district, and four of them, John S. Crawford, Walter Parks, George Goodman and George W. Waite, who are the owners of land described as being included within the limits of the district as made by the order of November 10, are nowhere shown to have been signers of the petition or to have been included in the petition as land owners. Their lands are also included in the graduated scale of lands to be taxed.

The question whether the order of October 31 organized the district and constituted it a legally organized district, and that all subsequent proceedings were null and void, is sought to be raised by appellants by this petition for *certiorari.* The action of the commissioners at the adjourned meeting in adding certain lands to the district and taking other lands therefrom, in giving the description of the lands and in adjourning from time to time, is sought to be attacked by this proceeding. The prayer of the petition is limited to the proceeding upon which the organization of the district was predicated, and refers to the action of the commissioners in making the classification of the lands, and the appeal thereupon. A remedy is provided for any person interested who objects, and correction of any error in the classification may be made by an appeal to three supervisors, and that must be availed of before one can be heard to complain in another forum. (*People* v. *Chapman,* 127 Ill. 387.) But that does not relate to the order organizing the district as authorizing such appeal. We are not disposed to hold that the order of October 31 went to the extent of organizing this district, but that the finding made in the order of the commissioners of highways was simply the finding provided for by paragraph 87. Because no power existed in them to organize a district at that meeting, an adjournment was made to November 9, as provided for by paragraph 88. At that meeting certain lands described in the petition were eliminated from the district and certain other lands not described in the petition were included,

and there is nothing in the proceeding showing any connection with the petition by the owners of the lands so included, by their action, or that of any one but the commissioners.

It has been held by this court that land owners shall have the right to be heard upon the question whether a petition has been presented and whether their lands are involved in a system of drainage, and in all matters pertaining to the organization of a district. One land owner may object to the consideration of the petition by the commissioners upon the express ground that the statutory notice had not been given, and may insist that the annexation of land proposed to be included in the district shall be valid as a whole, and may object because notice had not been given to others. (*Drainage District* v. *Griffin*, 134 Ill. 330.) It would be against every principle of justice and right to allow land to be included in a district, and made subject to taxation by such inclusion, when the action of the commissioners in creating the district and including the lands therein was without notice to the owners. The notice as required by the statute goes to the right of the commissioners to act, and unless the lands of the owners are included by their own petition and by their request as signers, or by having their names included in the petition as land owners by the petitioners, or by having their names appear in the notice, their lands cannot be included in the district, and they, or others whose lands are included, have the right to make an objection, for the objection goes to the entire organization. The commissioners are required to act in accordance with the provisions of the statute, and if they fail to do so there arises a necessity for the exercise of the common law writ of *certiorari*, as that is the only method by which the legality of their action may be tested and tried. They cannot act without the petition and without the affidavits, and if they do so, and attempt to find the boundaries of the district entirely without reference to the lands de-

scribed in the petition and without notice to the owners, the question may arise on *certiorari,* where they so proceed illegally and there is no appeal or other method of reviewing the proceeding. (*Miller* v. *Trustees of Schools,* 88 Ill. 26.) The legislature has made no provision for an appeal from the action of the commissioners of highways in determining the order of finding the precedent facts that a petition is signed by the requisite number of adult land owners in the proposed district, and the affidavits of two credible signers of the petition in support thereof, and the land mentioned in the petition requires combined system of drainage, and the lands will be benefited thereby.

Appellee contends that the legality of the organization cannot be raised on a petition for *certiorari,* and cites *Lees* v. *Drainage Comrs.* 125 Ill. 47, as sustaining that contention. A careful examination of that case discloses that there the corporate existence of a municipal body was sought to be challenged by a common law writ of *certiorari,* and it was expressly held that such a proceeding could not be resorted to for the purpose of determining whether such a corporation had a legal existence. It has been repeatedly adjudicated by this court that a writ of *certiorari* may be awarded to inferior jurisdictions and tribunals where it appears they have exceeded the limits of their jurisdiction and have proceeded illegally, and no method is provided for reviewing their proceedings by the courts. (*Gerdes* v. *Champion,* 108 Ill. 137; *Doolittle* v. *Galena and Chicago Union Railroad Co.* 14 id. 381; *Chicago and Rock Island Railroad Co.* v. *Whipple,* 22 id. 105; *Chicago and Rock Island Railroad Co.* v. *Fell,* id. 333.) The purpose of a common law writ of *certiorari* is to bring the entire record of an inferior tribunal before the court to determine whether such a tribunal has proceeded according to law, and the trial is to be had solely from an inspection of the record. The court cannot consider any matter not appearing of record, and if the want of jurisdiction or illegality appears from the record the proper

judgment is that the proceeding be quashed, but if the proceeding be regular the petition must be dismissed and the writ quashed, and these are the only judgments that can be entered in this procedure.

There need be no confusion in regard to what was said in the case of *Lees* v. *Drainage Comrs. supra,* and what is here said regarding the question of the existence of the district.   In that case we said:   "In looking into the record, however, in this case, it does not appear to be a proceeding to test the validity of the action of an inferior tribunal, but the petitioner is seeking to use the common law writ of *certiorari* to determine whether a certain corporation,—a drainage district,—has a legal existence." That case recognizes the principle that circuit courts may award writs of *certiorari* to inferior tribunals within their jurisdiction, where it is shown that the inferior tribunals have exceeded the limits of their jurisdiction and no appeal is allowed or other method of reviewing their proceedings provided.   In the case of a district in existence and action, and which has been carrying out the purpose of its organization as a going district, the common law writ of *certiorari* cannot be used to test the legality of its existence, but the proceeding must be by *quo warranto* to determine that question.   And this is all that is held in the *Lees case.*   That case recognizes the right to test the legality of the actions of an inferior tribunal by this writ.   Where a drainage district is being organized, and before it becomes a legal entity acting and carrying out the purposes of its existence, a controversy arises in the direct proceeding for its organization, which is tried before the very tribunal provided for determining it, and that tribunal, in the determination of that controversy, acts illegally and without authority, that proceeding may be directly followed by a proceeding to test the legality of its action under the common law writ of *certiorari*, even though the judgment to be entered under the writ may undo all the work of that inferior tribunal.   That

is the question presented in this case.    There is in this
respect a broad difference between these two cases, and
what is here said is brought into entire harmony with
what is said in the *Lees case* and the *Griffin case.*

The proceedings before the three supervisors, and
their action, are not necessary to be considered in this
proceeding.    We are of the opinion, from matters ap-
pearing of record in this case, that lands of persons not
named in the petition, and which persons were not asked
to sign the petition, are included in the district.    The
petition is a part of the record of this tribunal and its
finding is a part of the record, and the notices given,
necessary for them to base action thereon, must be con-
sidered as a part of the same record, because the legality
of their proceeding is to be determined by their own rec-
ord, and from all appearing in this case they were with-
out jurisdiction of the lands of four of these land owners.
Other land owners have the right to raise that question
in objecting to the proceeding herein.    The organization
was therefore illegal.

Counsel for appellee have filed in this case an ab-
stract, and moved to tax the costs to appellants because
of the insufficiency, as alleged, of appellants' abstract.
Appellee's abstract contains matter that has no place in
the record and is wholly unnecessary to be incorporated
in the record or abstract.    Appellants' abstract is very
unsatisfactory.    The motion to tax appellee's abstract is
denied.

The judgment of the Appellate Court for the Third
District, affirming the judgment of the circuit court of
Shelby county dismissing the petition for *certiorari*, is re-
versed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE BOGGS took no part in the decision of
this case.