(Nos. 15102-15103.—Judgments reversed.)

THE PEOPLE ex rel. John W. Rea, County Collector, Defendant in Error, vs. THE NOKOMIS COAL COMPANY, Plaintiff in Error.—Same Defendant in Error vs. THE INDIANA AND ILLINOIS COAL CORPORATION, Plaintiff in Error.

Opinion filed April 18, 1923.

1. TAXES—*property cannot be re-assessed without giving owner notice and opportunity to be heard.*. Notice to the property owner is jurisdictional and must precede any change or re-assessment of property after an assessment has once been made, and where an increase in the valuation of property has been made after a hearing and is agreed to and the change has been entered upon the assessment books, any further increase in the valuation at a subsequent meeting of the board without giving the property owner notice and an opportunity to be heard is unauthorized and void.

2. SAME—*notice of change in assessment must conform to the statute.* The notice to the tax-payer of a proposed re-assessment or increase in the valuation of property must strictly conform to the requirements of the statute, and such notice only binds him as to the description and character of property mentioned in the notice.

THOMPSON, C. J., dissenting.

WRITS OF ERROR to the County Court of Montgomery county; the Hon. J. H. RAGSDALE, Judge, presiding.

GEORGE B. GILLESPIE, (THOMAS E. GILLESPIE, and GEORGE M. GILLESPIE, of counsel,) for plaintiffs in error.

FRANK M. RAMEY, State's Attorney, (Jos. M. BAKER, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The value of the property of the Nokomis Coal Company, located in Montgomery county, was fixed by the assessor at $72,000, and one of the mine properties of the Indiana and Illinois Coal Corporation known as No. 10, at Wenonah, at $84,000, for the year 1920. The board of review having before it the question of increasing the valu-

ation of these properties, notified the coal companies to appear before it on August 24, 1920. In response to this notice the attorney for the coal companies appeared and a hearing was had and the valuation of the properties was substantially increased. Thereafter, September 16, 1920, a second hearing was had before the board of review, and after the testimony was heard and considered the value of the property of the Nokomis Coal Company was fixed at $135,000 and of said property of the Indiana and Illinois Coal Corporation at $130,000. On the same date, September 16, 1920, the full values of three other coal mine properties of the Indiana and Illinois Coal Corporation were fixed by the board of review as follows: Mine No. 11, known as the Kortkamp mine, $75,000; mine No. 14, known as the North mine, at Witt, $115,000; and mine No. 15, known as the Taylor Springs mine, at $45,000. The assessed value of all of the properties was then fixed at one-half of said sums. L. V. Hill, an attorney at law representing the plaintiffs in error, agreed to the valuations and that plaintiffs in error might be assessed upon the basis of such valuations. After thus increasing the valuations of the mine properties of plaintiffs in error, the board of review set aside and annulled all prior assessments and valuations put upon the properties by the board. The minutes of the latter meeting of the board show that the proper notations were made on the assessor's books, fixing the assessed valuations aforesaid.

About September 28, 1920, Hill received two notices from the board of review, to the effect that unless he appeared on September 30 following, at ten o'clock A. M., to show cause why he should not be assessed, that the board would take it for granted that he was the owner of certain notes secured by mortgage, money and other personal property, and the notices also stated that the board was about to revise "your assessment." Both notices were dated September 28, 1920, and were addressed to L. V. Hill, Hills-

boro, Illinois, and the notices are in the same language and do not describe him as an attorney or give any intimation that he was notified in the capacity of an attorney. These are the only notices that Hill received concerning the further consideration of raising or revising any assessments, and neither one of the plaintiffs in error which he represented as attorney ever received any notice of such meeting. Hill in some way heard a rumor that the board of review was about to reconsider the valuations of the property of the various coal companies in the county, and he attempted to attend the meeting of the board at the hour named in said notices for the purpose of representing the plaintiffs in error and his other clients. He accordingly went before the board of review at or before the hour above named, accompanied by his law partner, J. T. Bullington, both of whom testified in this case in substance as follows: They walked into the room where the board was in session and Hill asked the chairman, Lewis Chance, if they were having a hearing as to the coal companies' properties. He received no reply. He again asked the same question, and Chance told him to get out,—that this was his [the chairman's] hearing and if they needed him they would call him. Hill replied that he had a right to cross-examine the witnesses and that he also had some testimony he wanted to offer. The chairman then said that he didn't need him and he could get out. Hill and his partner then left, because they were not permitted to stay and hear any part of the proceedings that took place thereafter. The witnesses are not all in harmony as to the exact words that passed between the chairman of the board and Hill, but about all of them agreed that the chairman, while talking to Hill, appeared to be very much excited and angry. The evidence is clear that Hill was not present and not permitted to be present at the hearing before the board. Every member of the board testified that he knew Hill desired to be present while the witnesses were being interrogated, and one member stated

that when Chance was talking to Hill it appeared like he was excited, and that he told Hill that he would have to leave the room, and that he was not sent for by the board thereafter. On the same day a resolution was adopted increasing the valuation of the property of the Nokomis Coal Company from $135,000 to $285,000. By the same resolution the board increased the values of the Indiana and Illinois Coal Corporation's properties as follows: Mine No. 10, at Wenonah, from $130,000 to $215,000; mine No. 11, at Kortkamp, from $75,000 to $85,000; mine No. 15, at Taylor Springs, from $45,000 to $80,000; mine No. 14, near Witt, from $115,000 to $120,000. The board then by resolution changed the assessment books to show assessed values of the foregoing properties at one-half of their increased valuations, respectively, and then delivered its books to the county clerk and thereafter adjourned. The tax commission certified an increase of five per cent of the properties of said county, and the taxes were extended against the coal properties ·upon the assessed valuations aforesaid, plus five per cent. Plaintiffs in error paid the part of their taxes that would have been produced had the tax been extended upon the assessments made by the board of review on September 16, 1920, plus five per cent, and filed objections to the excess, amounting in the case of the Nokomis Coal Company to $5085 and in the case of the Indiana and Illinois Coal Corporation to $4017.93, before the county court of said county. The objections were overruled and judgment was entered accordingly. A writ of error was prosecuted in each case to review the judgment, and the causes have been consolidated in ·this court.

The cause is argued by defendant in error on the assumption that the attorney for plaintiffs in error only stated to the chairman of the board of review on the morning of September 30 that he desired to be present and· cross-examine the witnesses. who appeared for the People. We

think the weight of the evidence shows that he further said to the chairman that he wanted to examine some witnesses for plaintiffs in error, but in view of the evidence in the record we think it is immaterial whether he made the latter statement or otherwise. The board of review had previously had two hearings upon the matter of re-assessing or increasing the assessments upon the properties in question, and on the 16th of September the board did increase the assessments of the assessor and they were agreed to by the attorney. The proper entries of the increased assessments were then made upon the assessor's books and all previous assessments set aside and declared invalid. This action of the board was taken in accordance with the provisions of section 37 of chapter 120, (Hurd's Stat. 1921, p. 2726,) which provides that whenever the board of review shall decide to reverse or modify the action of the county assessor or the assessment in any case, or to change the list as completed, or the assessment or description of property in any manner, it shall cause the changes' to be made at once and entered upon the assessment books. The matter of increasing or changing the assessment of the properties of the plaintiffs in error was a closed matter when the assessments were agreed to and entered upon the assessment books on September 16 until notice was given to the plaintiffs in error of any further hearing of the board of review for the purpose of further changing the assessments. Any further change in the assessment by the board of review without notice to plaintiffs in error would have been a change without notice or opportunity of plaintiffs in error to be heard. Section 34 of said chapter, (Hurd's Stat. 1921, p. 2723,) under which section the board derives its power, provides that in none of the cases provided for in the act shall the assessment of the property of any person be increased unless such person or his agent shall first have been notified in writing and been given an opportunity to be heard. Plaintiffs in error had

308—4

no notice whatever of the attempted change in the assess-
ment of September 30, and they had no opportunity to be
heard·but were positively denied the right to be heard or
to be present at such hearing. The notices received by Hill
did not have any reference to mine property, and when he
appeared he was not permitted to remain in the room where
the hearing was to be had. The argument of defendant in
error that plaintiffs in error waived notice by appearing by
attorney is far-fetched and cannot be maintained. If the
board had permitted them to make an appearance by their
attorney the case would have been very different, but the
facts are they were denied the right to appear and even the
privilege of remaining at the place and hearing what trans-
pired, in violation of their constitutional rights. It would
not have been possible, under such treatment, for plaintiffs
in error to intelligently offer evidence to offset evidence
heard for the People which they and their attorney were
not permitted to hear. The action of the board of review
was very arbitrary and unreasonable,—just as much so as
if no notice or knowledge of its intended action had been
had by plaintiffs in error.

The rule that a board of review has no power to make
an increase in the assessment of property without notice to
the person affected and a right to be heard is founded upon
the plainest principles of justice and must be enforced un-
der the guaranties of the constitution. (*People* v. *Centralia
Gas Co.* 238 Ill. 113.) There can be nothing in the nature
of a re-assessment without notice to the party affected,
and an increased assessment without notice is made with-
out authority of law and is absolutely void. (*Cox* v. *Hawk-
ins,* 199 Ill. 68.) The law is settled that notice to the prop-
erty owner is jurisdictional and must precede any change
or re-assessment of property after an assessment thereof
has once been made. The notice to the tax-payer must
strictly conform to the requirements of the statute, and
such notice only binds him as to the description and char-

acter of the property mentioned in the notice. (*People v. St. Louis Bridge Co.* 281 Ill. 462; *People v. Shortall,* 287 id. 150.) The re-assessment or increase in the valuation of the properties of the plaintiffs in error of September 16 was valid, as there was due notice of the intention to increase and an opportunity given to them to be heard, and taxes against their property should have been extended upon the assessed valuations then made by the board. The action of the board of September 30 was void for the reasons aforesaid, and the county court should have sustained the objections of plaintiffs in error to the taxes objected to in both cases. *People v. Centralia Gas Co. supra; People v. Casey,* 286 Ill. 89.

·The judgments of the county court are reversed.

*Judgments reversed.*

Mr. CHIEF JUSTICE THOMPSON, dissenting:

As I read the decisions of this and other courts, the opinion in this case unsettles all the law heretofore announced on the subject at hand, and so I must respectfully dissent and give my reasons therefor.

The power to tax belongs exclusively to the legislative branch of the government, and when the law provides for a mode of confirming or contesting the charge imposed, with such notice to the person as is appropriate to the nature of the case, the assessment cannot be said to deprive the owner of his property without due process of law. Imposition of taxes is in its nature administrative and not judicial, and the proceedings before taxing bodies are not necessarily judicial (*Cincinnati, New Orleans and Texas Pacific Railroad Co. v. Commonwealth of Kentucky,* 115 U. S. 321, 6 Sup. Ct. 57; *Palmer v. McMahon,* 133 U. S. 660, 10 Sup. Ct. 324; *People v. Orvis,* 301 Ill. 350.) The action of taxing authorities may sometimes be unequal and unjust and oppressive, either by error of judgment or through caprice or prejudice, or even from an intention to oppress, and the

valuations may sometimes be fixed arbitrarily and bear no reasonable relation to what is fair and just, and be based upon neither actual evidence nor honest estimate. But these suppositions are contrary to all presumptions. All public officials are presumed to act honestly, justly and lawfully. Whatever the tribunal, whether judicial or administrative, and however carefully constituted and carefully guarded in its procedure, it may act wrongfully, but such possibilities are but the necessary imperfections of all human institutions and do not admit of remedy. Courts, manned as they are by human beings, are subject to the same imperfections as other governmental agencies, and, at least in our system of government, there is no revisory power placed in the judicial department to supervise the action of officers of the legislative and executive departments in matters which the people have committed to them. Tax proceedings are of necessity made summary. If a judicial inquiry were made into every assessment of property the machinery of government would stop. Under our system of taxation each property owner is in the first instance required to file a schedule setting forth the value of his property. If the assessment made by the assessor is considered too high he has the right to a hearing before the board of review, and if it is considered by the board of review to be too low he is entitled to notice of the intention of the board to increase the assessment. After he receives the notice he is entitled to appear before the board and to make such showing as he desires that the valuation of his property as fixed by the assessor is correct and that it should not be increased. (*American Express Co.* v. *Raymond,* 189 Ill. 232.) After hearing the tax-payer the board may proceed to inform itself by hearing further testimony, by making a personal inspection or by any other means that it sees fit to use, and in fixing the valuation to be placed upon the tax-payer's property it may act upon its own knowledge, information and judgment. (*Earl & Wilson* v. *Raymond,* 188 Ill. 15.)

The board is not bound to accept the statements made or evidence produced by the owner of property, nor can the owner complain that the board did not produce evidence to meet that produced by him. It need not disclose to the tax-payer the source of its information. (*American Express Co.* v. *Raymond, supra; In re Maplewood Coal Co.* 213 Ill. 283.) The board of review may continue its sessions until it has disposed of the matters before it, and until it has completed its work and attached the necessary affidavit to the assessment books and returned the books to the county clerk it has jurisdiction to change assessments of property. After a tax-payer has had one notice and one opportunity to appear before the board of review and justify the valuation fixed by the assessor he is not entitled to a further hearing. The law does not require the board to notify the property owner of the valuation fixed by it, and there is nothing in the law giving the property owner a right to a rehearing. Plaintiffs in error had two hearings before the board of review of Montgomery county, and at both of these hearings they were permitted to furnish the board with such information as they desired with respect to the proper valuation of their properties. They were not entitled to a further hearing. If the board of review found from information received at the first and second hearings, or at a subsequent hearing, that the assessment theretofore made was incorrect, it was the duty of the board to change that assessment. Granting that the board acted arbitrarily and failed to show counsel the ordinary courtesies to which lawyers and their clients are entitled, the action of the board in increasing the assessments was within the scope of its authority. It had jurisdiction of the persons of plaintiffs in error and of the subject matter, and no fraud of any kind, either in the procedure of the board or in the conclusion reached by it, has been shown. The objections were properly overruled and the judgments of the county court should be affirmed.