(No. 32602.

THE PEOPLE *ex rel.* Elmer K. Smith, County Collector, Appellee, *vs.* JOHN O. COEN, Appellant.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

HOMER C. COEN, of Elmhurst, for appellant.

CHARLES R. VAUGHN, of Olney, for appellee.

Mr. CHIEF JUSTICE CRAMPTON delivered the opinion of the court:

John D. Coen filed, in the county court of Richland County, certain objections to an application of the collector for judgment with respect to delinquent real-estate taxes for the year 1950. The objections in controversy here were overruled, and Coen appeals to this court.

Appellant is the owner of land leased for the production of oil, from which he receives a one-eighth royalty. In the

assessment of his land for tax purposes a valuation for oil royalty was included, together with the valuation for structures, in the column of the assessor's book designated "Improvements." This valuation for "oil royalty" was ascertained in accordance with a schedule recommended by the Department of Revenue for use by assessors in valuing oil-well working interests and royalty interests. Valuations set by the schedule are based upon the daily average barrels of oil produced during the month of March. Valuations per barrel for royalty interests vary according to the age or type of production. Thus, for flush production (where the well is less than seven months of age) the value is $770 per daily average barrel produced, for intermediate production (from the seventh through the twenty-fourth month) the value is $1160 per barrel, for settled production (the third year and after) the value is $1550 per barrel, and for stripper production (marginal producers) the value is $770 per barrel. Valuations per barrel for the working interests of operators are made dependent, in addition, upon the depth of the particular well and, in some cases, upon the total number of barrels produced.

During the year in question the assessor followed the customary practice in valuing such interests. He did not go upon the land to count the wells and observe how they were producing but instead obtained production figures from the report submitted by the operator or leaseholder, and determined a valuation for appellant's royalty interest accordingly.

Appellant urges that his royalty interest cannot be "assessed" as an improvement, and that such a procedure would result in double taxation. It is true, as he points out, that the right to receive unaccrued oil royalty is a part of the land and, in the absence of a conveyance by mineral deed, cannot lawfully be assessed as one estate while the land itself is assessed as another. Such was our holding in *People ex rel. Hargrave* v. *Phillips,* 394 Ill. 119. But it is

not the case here. In the present case the taxing authorities did not purport to make separate assessments and to tax individually both the land and the interest in oil royalty. The individual valuations of land, structures and oil royalty were made for the purpose of arriving at a proper value for the land as a whole, including its structures and its subsurface oil deposits. That the decision in the *Phillips case* has no application to the present facts is readily apparent from a reading of that opinion, where we expressly observed: "The effect of the oil-and-gas leases upon the value of the land of appellee for taxable purposes is not before us." The position of appellant in the case at bar is clearly without merit.

It is next insisted that use of the schedule constitutes "an income tax, or a tax on production of oil, or a tax on estimated future rents" and is therefore illegal. In support of this contention appellant asserts that the valuation is an attempt to estimate the future income for the year, based upon the number of barrels of oil produced during the thirty-one days immediately preceding April 1; that the authorities "tax this annually estimated income, receipts on production of oil from the tract, or the sales of oil off the land as though it were an 'improvement' for that year;" and that "the income or rent varies from year to year under the formula, depending upon the daily average barrels in the month of March." Appellant's argument falls far short of sustaining his contention. It consists of little more than assertions as to the alleged character of the tax, and fails to point out any respect in which the amounts set by the schedule fail to reasonably reflect the actual values of the respective types of oil-well and royalty interest. The schedule or formula is patently not a device for levying an income tax, production tax, or tax on future rents. It is simply a method for arriving at the full, fair cash value of the premises, as such value is enhanced by the land's oil-producing capacity. For this purpose it purports to

classify oil wells on the basis of age, type, depth, and so on; and the differences in the stated values, per average daily barrel of oil, are presumably related to actual variations in the quality and productivity of the several types of oil-producing property.

It is obvious that differences in value must exist among oil wells, and that such differences cannot be appraised by visual examination. It is also clear that the quantity of oil currently produced is not necessarily the sole measure of value for oil remaining under the surface; that the nature of the formation, life expectancy, and other factors must also be considered. In its table of recommended values the schedule purports to take account of such factors, and the burden rests upon the objector to sustain by affirmative proof his objection to the tax levied in accordance therewith. (See *People ex rel. Schrock* v. *First National Bank,* 353 Ill. 447.) In the absence of a showing that the valuations have no basis in fact, and amount in law to fraud, the objection cannot be upheld. (See *People ex rel. Tennyson* v. *Texas Co.* 406 Ill. 120.) We find no such showing in the record before us.

Appellant argues, further, that use of the schedule results in unlawful discrimination and unreasonable classification "as between the various owners of oil interests, as between one land owner and another, and as between operators and royalty owners." He bases this argument upon the facts that when the tax is broken down and applied against the "per-barrel" production of various oil wells it appears that a barrel of oil from one well has a much larger burden of tax than that from another well, and that in some cases the valuations for this tax, per barrel of oil produced, exceed the value at which a barrel of oil on hand and in storage is assessed for personal-property tax purposes. The fallacy in the argument is apparent from what we have already said concerning the character of the valuations designated in the schedule. They are not made for

the purpose of an excise tax on production or on the receipt of income from the oil produced, where the arguments of appellant might have some application, but for the purpose of a property tax upon land as to which an oil lease has been given. The mere fact that oil from one well may sell for the same price per barrel as that from another, and that both currently produce the same quantity, does not require that the wells or royalty interests therein be valued the same for purposes of real-estate tax. There may be significant differences in the other factors we have mentioned, such as the life expectancy and the quantity of subsurface oil remaining in the land. The contention of appellant cannot, therefore, be sustained.

It is lastly maintained that as the assessor did not go upon the land to make his valuation of the oil royalty but, instead, accepted the figures supplied by the operator-lessee and applied the schedule to ascertain the value, the tax, in so far as it is based thereon, must be held illegal and invalid. It is true, as appellant points out, that the law requires the assessor, in person or by his deputy, to actually view and determine the value of the land. It does not follow, however, that the assessment made in the case at bar must be vitiated. The fact that the lessee oil company supplied production figures, which the assessor determined to adopt for the purpose of arriving at a value for appellant's oil royalty, does not mean that the company itself made the valuation. Use of the figures for that purpose was manifestly a result of the independent judgment of the assessor. Nor does the failure of the assessor to actually view the interest in question have the effect claimed by appellant. There is no evidence in the record that appellant's property is assessed upon any different basis than other like property in the same vicinity. Nor is there any testimony or other relevant evidence tending to show that the land is assessed above its value. Under such circumstances the

irregularity relied upon by appellant cannot be utilized to defeat the assessment.

The law presumes that in fixing the value of property the taxing authorities have properly discharged their duties and that the tax is just. One objecting to the valuation has the burden of proving, by clear and convincing evidence, that an excessive valuation was made as the result of some improper, corrupt or illegal motive on the part of the assessing authorities, or that the valuation is so grossly excessive as to create a constructive fraud. (*People ex rel. Toman v. Marine Trust Co.* 375 Ill. 488.) Such proof has not been made in the case at bar. The fact, standing alone, that there has been a failure to go on the land and actually view the improvement is merely an irregularity and is not sufficient to defeat the tax. See *Grant Land Assn. v. People ex rel. Hanberg,* 213 Ill. 256, 259.

We have examined other points, raised by appellant but not argued in his brief, and find them to be without merit. The judgment of the county court of Richland County is affirmed.

*Judgment affirmed.*