STANLEY L. GOODFRIEND *et al.*, Plaintiffs-Appellees, *v.* THE BOARD OF APPEALS OF COOK COUNTY *et al.*, Defendants-Appellants.

(Nos. 56421(A), 56421(B) cons.;

First District (2nd Division)—November 13, 1973.

Edward V. Hanrahan, State's Attorney, of Chicago (Theodore M. Swain, Special Assistant State's Attorney and Thomas E. Brannigan, of counsel), for appellants.

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels and John E. Angle, of counsel), for appellees North Marina City Building Corporation and Harris Trust and Savings.

Charles A. Bane, David J. Rosso and Patrick B. Long, of Isham, Lincoln & Beale, of Chicago, for appellees Stanley L. Goodfriend *et al.*

Thomas D. Flanagan, of Chicago, for appellee LaSalle National Bank.

John J. Sullivan and William J. Harte, both of Chicago, for appellee Mid-Continental Realty Corporation.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

These are six appeals from judgments permanently enjoining the collection of certain 1970 real estate taxes in Cook County. Originally, they were taken directly to the Supreme Court on the ground that revenue was involved and public interest required expeditious resolution of the issues presented. A justice of that court, in vacation, consolidated the cases but reserved the question of jurdisdiction for decision in the full term. On September 16, 1971, orders were entered transferring the appeals to us for disposition.

I.

Five issues are presented for review. (1.) Whether a common law writ of certiorari is the proper procedure by which to review the decision of a board of appeals. (2.) Whether, in one of the certiorari proceedings, it was error for the trial court to strike from the record a letter which appellants contended established a material fact. (3.) Whether, under

the Revenue Act of 1939, to correct errors of judgment as to valuation, the County Assessor of Cook County had the authority to file with appellant Board of Appeals certificates of correction by which he proposed increases in the assessed valuation of real estate. (4.) Whether the appellant Board had jurisdiction to hear and rule on three certificates of correction filed by the County Assessor to correct errors of judgment as to the valuation of the real estate involved. (5.) Whether by filing complaints which only questioned the jurisdiction of appellant Board of Appeals, a taxpayer waives his objection that the County Assessor did not give him notice and an opportunity to be heard before the assessed valuation of his real estate was increased in a nonquadrennial year. These issues arise from the following facts.

## II.

In 1970, plaintiffs-appellees Stanley L. Goodfriend, Louis R. Solomon, Albert Robin, George Dovenmuehle and Arthur Rubloff, partners in four limited partnerships; North Marina City Building Corporation; Mid-Continental Realty Corporation; Harris Trust and Savings Bank, Trustee of Trust No. 30980 and La Salle National Bank of Chicago, Trustee of Trust No. 39814, were the owners of real estate in Cook County, Illinois. Defendants-appellants Board of Appeals of Cook County; George M. Keane and Harry H. Semrow, its members; P. J. Cullerton, County Assessor of Cook County; Edward J. Barrett, Cook County Clerk; Bernard J. Korzen, Cook County Treasurer and Robert J. Lehnhausen, Director, Illinois Department of Local Government Affairs, were responsible, respectively, for the correction of erroneous assessment of property in the county, assessment of property for tax purposes, extension of taxes and issuance of warrants for their collection, collection of the taxes levied in accordance with law and the equalization of assessed valuations on taxable property in Illinois.

In the Cook County townships where appellees owned real estate, 1970 was a nonquadrennial year. Harris Trust and Savings Bank held title to the Brunswick Building in Chicago, a multi-story office structure in South Chicago Township which had a 1969 assessed valuation of $4,970,653. On or about December 12, 1970, Harris Trust received a notice from appellant County Assessor that on December 21, 1970, in his office, he was going to hold a hearing to consider an increase in the assessment of the Harris Trust real estate for 1970 taxes. Mid-Continental Realty Corporation owned seven parcels of real estate in North Township, City of Chicago, all improved with multi-story apartment buildings. On February 16, 1971, the corporation received a notice from the Assessor's office stating that the seven parcels had been incorrectly

assessed for 1970, and that the Assessor was instituting a correction "* * * which results in an increase in your real property assessment for 1970." Therefore, the notice said, on February 26, 1971, also in the Assessor's office, "* · * * [a] hearing will be held * * * at which you will have the opportunity of presenting any facts you may have bearing on the value of your holding." LaSalle National Bank, whose realty was assessed for 1969 taxes at $2,826,014, also received a similar notice notifying it of a hearing on the same day, and for the same purpose.

As required by law, appellant Cullerton, as the County Assessor, on February 18 and 19, 1971, completed his work on the 1970 real estate assessments for North and South Chicago townships in the county. He forwarded the assessment books to appellant the Board of Appeals. Those books and collateral records showed that when the Assessor had completed his 1970 assesments for the townships involved, that is, a week before the February 26 hearings for which he had given notices, he had increased the assessed valuation of the real estate owned by Harris Trust, Mid-Continental and LaSalle National. In complaints they later filed before appellant Board, Harris Trust, Mid-Continental and LaSalle National attacked the Board's jurisdiction and objected to the increased assessments on the ground that the Assessor did not give them a hearing before he increased the assessed valuation of their real estate. The Board rejected the objections and confirmed the increases.

The real estate owned by the Goodfriend partners consisted of five tracts of land in North Township improved by a residential and office complex known as Carl Sandburg Village in Chicago. In 1969, this real estate was assessed a total of $7,258,820. North Marina City Building Corporation owned a parcel, also in North Township, which had a 1969 assessed valuation of $1,470,080. Mid-Continental Realty Corporation, in addition to its seven North Township parcels, owned real estate in Lakeview Township which had a total assessment of $9,402,482. On April 7, 1971, the Goodfriend, North Marina City and Mid-Continental (as to its Lakeview Township real estate), received notices from appellant Board that, as to each of them, the County Assessor had filed with it a certificate of correction by which he proposed an increase in the assessed valuation of their respective real estate. The notices stated "[t]he Cook County Assessor claims that an error (other than an error of judgment as to value) was discovered after the 1970 assessments were completed." For the Goodfriend partners, the certificates of correction showed that the proposed increase was $4,426,340; for Marina City Building, $1,512,-783; for Mid-Continental, $2,739,153.

In later proceedings before appellant Board, Goodfriend, Marina City

and Mid-Continental attacked the Board's jurisdiction and objected to the proposed increases on the ground that they were based on the Assessor's error of judgment as to valuation of their real estate; and that despite their rights under the revenue laws, they had neither received a notice nor had a hearing prior to the Assessor's having determined the amount by which the 1970 assessed valuation of their real estate was to be increased. On April 19, 1971, appellant Board sustained its jurisdiction, overruled the objections and confirmed the Assessor. Thereafter, Goodfriend, Marina City and Mid-Continental filed individual suits to permanently enjoin collection of the real estate taxes based on the increased assessments. The complaint in the Mid-Continental suit added a count for a writ of certiorari requiring appellant Board to certify to the court the proceedings it had undertaken pursuant to the certificates of correction filed by the Assessor.

In separate suits, Mid-Continental, as to its seven parcels in North Township, Harris Trust and LaSalle National, filed a two-count complaint. One count prayed for a permanent injunction against collection of the increased assessments and another petitioned for issuance of a writ of certiorari directing the appellant Board to certify to the trial court the proceedings by which it confirmed the Assessor. The trial court ruled that certiorari was "eminently proper" and issued the writs which had been prayed for in four of the six suits. After hearing evidence and reviewing the record shown on return of the writs, the trial court found that contrary to their rights under the revenue laws, Harris Trust, Mid-Continental Realty (as to its North Township real estate) and LaSalle National Bank were not given a hearing by the County Assessor before he increased the assessed valuation of their real estate for 1970 taxes. As to the certificates of correction in which the Assessor proposed increases in the assessed valuation of the real estate owned by the Goodfriend partners, North Marina City Building Corporation and Mid-Continental Realty Corporation (the parcels in Lakeview Township), the trial court found that no hearing was given the affected taxpayers prior to the Assessor's determination of the proposed increases, or prior to the filing of the certificates; and that the certificates were based on the Assessor's errors of judgment as to valuation, an invalid use of a certificate of correction. The trial court filed a memorandum concluding that all the increased assessments were void; and that appellants, in their respective capacities, could not enforce them. Therefore, in the four cases where writs of certiorari had issued, the proceedings before the Board of Appeals and the Assessor were quashed; and in all the cases, collection of the 1970 real estate taxes based on the increased assessments was permanently enjoined.

## III.

■■ It is the law in this State that circuit courts have the power to issue common law writs of certiorari addressed to all inferior tribunals whenever it is shown either that they have exceeded their jurisdiction or have proceeded illegally, and no direct appeal or other mode of direct review of their proceedings is provided. (*People ex rel. Loomis v. Wilkinson,* 13 Ill. 660; *Doolittle v. Galena and Chicago Union R.R. Co.,* 14 Ill.381; *Kinsloe v. Pogue,* 213 Ill. 302, 72 N.E. 906.) This law calls attention to the fact that by provisions in the Revenue Act of 1939, the legislature has vested appellants Board of Appeals, Keane and Semrow (its members), with the power to decide the property rights of others, a power which when exercised makes their official actions judicial. (*McKeown v. Moore,* 303 Ill. 448, 453, 135 N.E. 747.) However, when considered in relation to the circuit court, the Board of Appeals is an inferior tribunal. *Jarman v. Board of Review of Schuyler County,* 345 Ill. 248, 178 N.E. 91.

■■■ Taxation of property is a function that is legislative rather than judicial, and under the limitations expressed in section 1, article IX of the Illinois constitution, courts of this State do not possess authority to directly review a decision of the Board of Appeals. (*White v. Board of Appeals of Cook County,* 45 Ill.2d 378, 259 N.E.2d 51.) With the exception of actual or constructive fraud, instances which can be occasion for injunctive relief, the Board's administrative decisions concerning assessments are final. (*People ex rel. Nordlund v. S.B.A. Co.,* 34 Ill.2d 373, 215 N.E.2d 233.) Therefore, appellees having alleged that the Board had either exceeded its jurisdiction or had proceeded illegally, and that no mode of direct review was available, the writs of certiorari were the proper proceedings for review of its decisions. *Jarman v. Board of Review of Schuyler County,* 345 Ill. 248, 255, 178 N.E. 91; *People ex rel. Brenza v. Chicago & N.W. Ry. Co.,* 411 Ill. 85, 103 N.E.2d 85.

■■ In determining whether, in one of the certiorari proceedings, it was error for the trial court to strike from the record a letter which appellants contended established a material fact, we notice that the complaints with the certiorari count had, in addition, a separate count praying for declaratory and equitable relief. This count alleged a separate claim and stated a complete and different cause of action. (See *Herman v. Prudence Mutual Casualty Co.,* 41 Ill.2d 468, 244 N.E.2d 809; compare *Boozer v. United Auto Workers of America, AFL-CIO, Local 457,* 4 Ill.App.3d 611, 279 N.E.2d 428.) Trial of the issues of fact formed by the pleadings in this count was governed by rules that generally determine the admissibility of evidence and the grant of declaratory or equitable relief.

■■ Trial of the certiorari count, however, was governed by different rules. The writs, on their return, brought the relevant records in order

that the trial court could determine whether, with regard to the assessments involved, the Board had jurisdiction and had acted in accordance with law. (*Sanner v. Union Drainage District,* 175 Ill. 575, 582, 51 N.E. 857.) The trial was to consist only of an inspection of the records of the Board's proceedings. (See *Peterson v. Lawrence,* 20 Ill.App. 631; *Murphy v. Houston,* 250 Ill.App. 385.) Questions of fact could not be reviewed or decided. (*Low v. Galena & Chicago Union R.R. Co.,* 18 Ill. 324; I.L.P. Certiorari, § 35.) The record could not be contradicted, it being the rule that, in the absence of statutory authorization, a trial court on the return of the writ of certiorari cannot admit extrinsic evidence either to support or overthrow the proceeding being reviewed. (*Frye v. Hunt,* 365 Ill. 32, 5 N.E.2d 398; 14 Am. Jur. Certiorari § 51.) With regard to the judgments which the court could enter, there were only two: (1) If from its record it appeared that the Board lacked jurisdiction or that its actions were illegal, the trial court could quash the Board's proceedings. (2) If it appeared that the Board had jurisdiction and its actions were legal, the certiorari counts had to be dismissed and the writs quashed. *People ex rel. Nelson Bros. Storage & Furniture Co. v. Fisher,* 373 Ill. 228, 230, 25 N.E.2d 785.

With these principles in mind, we have studied the proceedings below; and it appears that on returns of the writs, the trial court examined the records of the Board. In the hearing on the certiorari count of Mid-Continental's complaint as to its Lakeview Township real estate, appellants sought to include in its return a transmittal letter dated February 21, 1971, which the other parts of the record show was not before the Board of Appeals when it confirmed the Assessor. An objection was made to the letter, and the trial court granted a motion to strike it from the record.

■■ In our judgment, this ruling was correct. When a court, by a common law writ of certiorari, reviews the proceeding of an inferior tribunal, the record of that tribunal cannot be impeached. A letter which was not before the Board of Appeals when it made the decision under review was not part of the record. (See *Commissioners of Highways of The Town of Sonora v. Supervisors of Carthage,* 27 Ill. 140, 143; compare *McDonald v. Road District No. 3,* 292 Ill. 386, 391, 127 N.E. 29.) To have included it, as appellants sought to do, would have been to impeach the record before the Board.

Despite this fact, the letter was admissible in the trial of the count that prayed for declaratory and equitable relief. When that count was heard, appellants neither offered the letter in evidence nor made it the subject of an offer of proof. It is a general rule that "[e]vidence may be admissible for a special purpose, but not admissible generally; or it may

be admissible for one purpose but not for another * * *." (88 C.J.S. Trial, § 82, p. 188; 1 Wigmore Evidence § 13 (3d ed.).) We conclude, therefore, that in the particular certiorari proceeding, the trial court did not err when it struck from the record the letter which appellants claim established a material fact.

It is agreed by the parties that on April 7, 1971, the Goodfriend partners, North Marina City Building and Mid-Continental Realty (as to its Lakeview Township property) received notices from the Board of Appeals that the County Assessor had filed certificates of correction proposing increases in the assessed valuation of their real estate for 1970 taxes. Appellants concede, and the trial court found, that the certificates were to correct the Asssessor's errors of judgment as to the valuation of the real estate involved. Appellees Goodfriend and partners, North Marina City Building and Mid-Continental Realty contend, as the trial court held, that this use of certificates of correction was not authorized by the Revenue Act. Appellants, based on their construction of the statute, contend that the certificates were authorized by the Revenue Act of 1939. We are therefore required to decide whether the Revenue Act gave the County Assessor of Cook County authority to file with the Board of Appeals certificates of correction based on errors of judgment as to valuation, and thereby propose increases in the assessed valuation of the real estate involved.

The Revenue Act of 1939 provides that "[w]henever the county assessor * * * certifies to the board of appeals that there is a mistake or error other than a mistake or error of judgment as to the valuation of any real or personal property, in any assessment or in the entry of any assessment in the assessment books, setting forth the nature of such mistake or error and the cause thereof, the board of appeals shall give the person or corporation affected by such assessment notice and an opportunity to be heard thereon." (Ill. Rev. Stat. 1969, ch. 120, par. 603.) Upon the making of such a certification, the appellant Board, after notice to the taxpayer and an opportunity to be heard, has the power to "[o]rder the county assessor to correct any mistake or error (other than mistakes or errors of judgment as to the valuation of any real or personal property) * * *." (Ill. Rev. Stat. 1969, ch. 120, par. 594(2).) These are the only provisions in the Revenue Act which authorize a county assessor to file and a board to consider a certificate of correction.

Appellants, however, do not agree with this construction of the statute. They argue that in one paragraph of the Act it is provided that "[c]omplaints by taxpayers and certificates of correction by the county assessor in relation to the assessment of real property shall be filed by townships with the board of appeals on or before the dates specified in

the notices given pursuant to Section 115." (Ill. Rev. Stat. 1969, ch. 120, par. 598.) Section 115 governs notice of the meetings which a board of appeals must hold when it sits to revise and correct assessments. (Ill. Rev. Stat. 1969, ch. 120, par. 596.) These provisions, appellants say, are inconsistent with another paragraph of the Act authorizing a board to act "[w]henever the county assessor  *  *  *  at any time prior to the time the board of appeals is required to complete its work  *  *  *  certifies to the board of appeals that there is a mistake or error  *  *  *." (Ill. Rev. Stat. 1969, ch. 120, par. 603.) Appellants argue that there is an inconsistency between the provisions of par. 596 and those of par. 603, because they establish different times for the filing of a certificate of correction. Appellants insist that these two paragraphs authorize the procedure used by the Assessor when he filed the certificates correcting his errors of judgment regarding the valuations.

██ We have examined the two paragraphs to which appellants refer and conclude that they are free of inconsistency. One paragraph (Ill. Rev. Stat. 1969, ch. 120, par. 598) deals with the filing of complaints and certificates of correction and refers to another that governs notices of meetings which a board must hold. The other paragraph (Ill. Rev. Stat. 1969, ch. 120, par. 603) deals with certification by a county assessor to a board that he has made a mistake or error, other than a mistake or error of judgment as to the valuation of any real or personal property. In any event, an inconsistency between the provisions of these paragraphs, if one existed, could not be so construed as to give the Cook County Assessor the right to file a certificate correcting an error of judgment as to valuation and thereby proposing an increase in the assessed valuation of real estate, when there is no provision in the Revenue Act that creates such a procedure. [T]ax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the State, in order to carry out the intention of the legislature and further the important public interest that such statutes subserve." (*People ex rel. Conner v. Burgess-Norton Mfg. Co.,* 49 Ill.2d 397, 275 N.E.2d 403; *City of Chicago v. Neher,* 5 Ill.App.3d 22, 282 N.E.2d 521; *State ex rel. County of Hennepin v. Brandt* (1948), 225 Minn. 345, 31 N.W.2d 5; 3 Sutherland, Statutory Construction § 6703 (3d ed.).) Therefore, we conclude that under the Revenue Act of 1939, the County Assessor of Cook County did not have the authority to file with appellant Board of Appeals certificates of correction, based as they were on errors of judgment as to valuation, and thereby proposed increases in the assessed valuation of real estate. The next issue, then is whether the appellant Board had jurisdiction to hear and rule on the certificates filed by the County Assessor.

■■ Jurisdiction is power, the power to hear and determine a cause. (*People ex rel. Raymond v. Talmadge*, 194 Ill. 67, 61 N.E. 1049; *City of Mattoon v. Stump*, 4 Ill.2d 149, 122 N.E.2d 250.) Under the Revenue Act, appellant Board of Appeals had the power only to hear and "* * * correct any mistake or error (other than mistakes or errors of judgment as to the valuation of any real or personal property) * * *." (Ill. Rev. Stat. 1969, ch. 120, pars. 594, 603.) The three certificates which the Assessor filed were, as the trial court found, to correct his errors of judgment as to the valuation of the real estate involved.

■■ Within the scope of its administrative powers, appellant Board is an inferior tribunal. (*Parker v. Kirkland*, 298 Ill.App. 340, 18 N.E.2d 709.) It has only the jurisdiction given it by statute. (*People ex rel. Carr v. Keogh*, 306 Ill. 323, 325, 137 N.E.2d 816.) It cannot make an assessment; it can only review assessments made by the County Assessor. (*Jarman v. Board of Review*, 345 Ill. 248, 178 N.E. 91.) It did not have the authority to consider increases in assessments which a county assessor, by a certificate of correction, proposes in order to correct his errors of judgment as to the valuation of property. Consequently, the Board of Appeals did not have jurisdiction to hear and rule on the three certificates by which, to correct errors of judgment as to valuation, the County Assessor of Cook County proposed increases in the assessed valuation of real estate owned by the Goodfriend partners, North Marina City Building Corporation and Mid-Continental Realty Corporation (the parcels in Lakeview Township).

Mid-Continental Realty, as to its seven parcels in North Township; Harris Trust and Savings Bank, as to the Brunswick Building in South Chicago Township; and LaSalle National Bank, as to its two parcels also in North Township, were treated differently by the County Assessor than were the taxpayers affected by the certificates of correction. Without an opportunity to be heard by him, the County Assessor, when he completed his work on February 18 and 19, 1971, increased the assessed valuation of Mid-Continental's seven parcels from $6,120,153 to $9,122,415; Harris Trust's from $4,970,653 to $8,372,153 and LaSalle National's from $2,826,014 to $4,560,946. As soon as these increases came to their attention, the three taxpayers filed complaints before appellant Board of Appeals attacking the jurisdiction of the Board to confirm the Assessor's increases. They contended that the Assessor could not increase the assessed valuation of their real estate without previous notice to them and without giving them an opportunity to be heard by him. The three taxpayers did not introduce any evidence relative to the accuracy of the assessed valuations, but insisted that the increased assessments were

illegal and void because they violated the provisions of the Revenue Act of 1939.

In this court, appellants contend that in filing complaints which only attacked the Board's jurisdiction to confirm the Assessor, and by failing to introduce evidence to support their contention that the increased assessments were unreasonable, Mid-Continental, Harris Trust and LaSalle National waived their right to object to the Assessor's failure to give them a hearing before he increased the assessed valuations of their property for 1970 taxes. Appellants maintain that subsequent to filing their complaints the three taxpayers had a hearing before the appellant Board, which cured any defect in the assessment procedure.

Appellees reply that their complaints were necessary and indeed, were the only way they could raise the essential jurisdictional and legal questions concerning the conduct of the Assessor increasing the assessed valuation of their real estate for 1970 taxes. Therefore, we must determine whether previous notice to a taxpayer and an opportunity to be heard by a county assessor are jurisdictional prerequisites to an increase in assessments by a county assessor in a nonquadrennial year, and whether, by filing complaints which only questioned the jurisdiction of appellant Board of Appeals, Mid-Continental Realty, Harris Trust and LaSalle National Bank waived their objection that the County Assessor of Cook County did not give them an opportunity to be heard before the assessed valuations of their real estate were increased.

■■ We begin with the premise that when these assessments were increased, it was a constitutional guaranty in this State "* * * that every person * * * shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise * * *." (Ill. Const. 1870, art. IX, sec. 1.) Accordingly, it has been provided that in Cook County there shall be an assessor, who, aided by clerical help and deputies, shall assess property in the county for tax purposes. (Ill. Rev. Stat. 1969, ch. 120, par. 487.) The assessment of property for taxation must be made by the county assessor or his deputy. (*People ex rel. Cutmore v. Harding,* 333 Ill. 384, 164 N.E. 827; *People ex rel. Smith v. Coen,* 415 Ill. 73, 112 N.E.2d 119.) In fact, by statute the assessor takes an oath that this will be done. (Ill. Rev. Stat. 1969, ch. 120, par. 488.) He, exclusively, is vested with power to make assessments. (See *Bistor v. McDonough,* 348 Ill. 624, 181 N.E. 417; compare *People ex rel. Town of Cicero v. Sweitzer,* 339 Ill. 28, 170 N.E. 728.) This power imposes on the assessor the duty that is correlative to a right which inheres in every person in the county: the right

to be informed of the value placed on his property by the County Assessor in order that he who is aggrieved may appeal to the Board. See *Lindheimer v. Nelson*, 369 Ill. 312, 16 N.E.2d 734.

The Revenue Act 1939 provides that quadrennially, that is to say that every four years, there shall be an assessment year for every township or taxing district in every county of the State for the purpose of taxation. (Ill. Rev. Stat. 1969, ch. 120, par. 524.) The quadrennial assessment as modified, equalized or changed establishes the assessment on which taxes are levied during the remainder of the quadrennial period. (*People ex rel. Town of Cicero v. Sweitzer*, 339 Ill. 28, 36, 170 N.E. 728.) The year 1970, the tax year with which we are concerned in these appeals, was not the quadrennial assessment year in the townships where appellees' parcels of real estate were located. Therefore, revision of the assessed valuation of their real estate was governed by the limitation that no assessment could be increased "*  *  * without previous notice to the owner and an opportunity to be heard." (Ill. Rev. Stat. 1969, ch. 120, pars. 578, 579.) These provisions of the Revenue Act have never been construed by a court of this State. Nonetheless, there are analogous constructions by courts in other jurisdictions.

██ For example, in *Amerada Petroleum Corp. v. Hester* (1940), 188 Okla. 394, 395, 109 P.2d 820, the Supreme Court of Oklahoma said that "[a]n 'opportunity to be heard' *  *  * is synonymous with 'hearing.' 'Hearing,' as used, 'contemplates a listening to facts and evidence for the sake of adjudication.'" In *State v. Orris* (1971), 26 OhioApp.2d 87, 89, 269 N.E.2d 623, it was held that "[h]earing suggests to 'give audience to,' a meaning which attaches when in the law a court holds a 'hearing'." In *People v. Ivenditti* (1969), 276 Cal.App.2d 178, 180, 80 Cal.Rptr. 761, the court of appeals of California had occasion to say that "[a] 'hearing' is generally understood to be a proceeding where evidence is taken to the end of determining an issue of fact and a decision made on the basis of that evidence." Compare *Thede v. Thornburg* (1929), 207 Iowa 639, 223 N.W. 386. Therefore, we hold that when the legislature enacted that in a nonquadrennial year the County Assessor of Cook County shall not increase an assessment "*  *  * without previous notice to the owner and an opportunity to be heard," it imposed a duty on the County Assessor, before he increases a property assessment for taxation, to give the taxpayer a notice and hearing within the common meaning of those terms. Notice to the property owner and an opportunity to be heard are jurisdictional; they must precede any change or reassessment. (*Lindheimer v. Nelson*, 369 Ill. 312 316, 16 N.E.2d 734.) An assessment without notice and hearing is invalid. *People ex rel. Edgar v. National Box Co.*, 248 Ill. 141, 93 N.E. 778.

In support of their contention that Mid-Continental Realty, Harris Trust and La Salle National, by filing complaints with appellant Board, waived their objection that the County Assessor did not give them a hearing, appellants rely on *Dietman v. Hunter*, 5 Ill.2d 486, 126 N.E.2d 22 and *Little Sister Coal Corp. v. Dawson*, 45 Ill.2d 342, 259 N.E.2d 35. We have examined these cases and observe that, in both, the statute which governed changes in assessments for taxation did not give the taxpayer the right to previous notice and an opportunity to be heard before the assessed valuation of his property could be increased. Therefore, *Dietman* and *Little Sister Coal* cases are not in point.

In the cases before us, Mid-Continental Realty, Harris Trust and LaSalle National had the right to previous notice from appellant County Assessor and an opportunity to be heard by him on the justness of any increase in the assessed valuation of their real estate for 1970 taxes. (Ill. Rev. Stat. 1969, ch. 120, par. 578.) The notice and hearing were jurisdictional. (*People ex rel. Rea v. Nokomis Coal Co.*, 308 Ill. 45, 50, 139 N.E. 41.) Appellate Board of Appeals could not confirm the increases in assessments in the presence of this jurisdictional defect. Under these circumstances, the complaints which Mid-Continental, Harris Trust and LaSalle National filed were necessary; they did not waive any right under the Revenue Act. Therefore, by filing the complaints which only questioned the jurisdiction of appellant Board of Appeals, Mid-Continental, Harris Trust and LaSalle National did not waive their objection that the County Assessor had not given them notice and an opportunity to be heard before the assessed valuation of their real estate was increased in a nonquadrennial year.

## IV.

For these reasons, we conclude that the trial court did not err when, in the four cases in which it had issued writs of certiorari, it quashed the proceedings before the appellant Board of Appeals; and when by its permanent injunction, it enjoined appellants from collecting the 1970 real estate taxes based on the increased assessments. The judgments are affirmed.

Affirmed.

STAMOS, P. J., and HAYES, J., concur.