John M. RICE and Geraldine C. Rice,
Plaintiffs and Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF
BENSON COUNTY, North Dakota, Lloyd
Omdahl, State Tax Commissioner, and City
of Maddock, North Dakota, Defendants and
Respondents.

No. 8209.

Supreme Court of North Dakota.

June 3, 1965.

Waldron & Kenner, Minot, for appellants.

M. C. Hiaasen, State's Atty., Minnewaukan, and Duffy & Haugland, Devils Lake, for respondents.

ERICKSTAD, Judge.

This is an appeal from a judgment of the District Court of Benson County wherein the court affirmed on appeal a decision of the Board of County Commissioners of Benson County denying an abatement and refund of taxes levied and assessed against certain buildings and improvements for the years 1956 through 1962. During the trial of the matter in district court taxes paid on the buildings and improvements for the year 1963 were included by stipulation. Trial de novo is demanded.

The appellants, John M. and Geraldine C. Rice, argue that their buildings and improvements, although within the incorporated limits of the City of Maddock, North Dakota, are all a part of their farmstead and are wholly used in connection with their farming operations, and thus, under the provisions of Subsection 15 of Section 57-02-08 of the North Dakota Century Code, are exempt from taxation.

> 57-02-08. Property exempt from taxation.—All property described in this section to the extent herein limited shall be exempt from taxation, that is to say:
>
> \* \* \* \* \* \*
>
> 15. All farm structures, and improvements located on agricultural lands. This subsection shall be construed to exempt farm buildings and improvements only, and shall not be construed to exempt from taxation industrial plants, or structures of any kind not used or intended for use as a part of a farm plant, or as a farm residence.
>
> \* \* \* \* \* \*

North Dakota Century Code.

They further point out that their buildings are situated on unplatted land within the city limits and that this factor, along with agricultural use of the land, makes the land agricultural and the buildings and improvements thereon exempt. They cite the fol-

lowing portion of an opinion rendered by this court with emphasis on the last sentence:

Petitioner, when he purchased this lot, accepted its status as city property, and for the purpose of tax exemption, cannot by usage change its classification from urban property to agricultural land, a power vested solely in the legislature. Only by vacation of that portion of the city plat where his property is located, may this be accomplished. Eisenzimmer v. Bell, 75 N.D. 733, 32 N.W.2d 891, at 893.

The City of Maddock and the County of Benson, as respondents, assert that many authorities hold that the mere fact that property is located within an incorporated city or village makes it urban. Their analysis of Eisenzimmer is that this court held therein that land was conclusively urban property if platted. They suggest that the platting is merely evidentiary and that if all other factors show that the area is truly urban, with city lights, city sewer, city water, city paving, close proximity of neighbors, city curbs, city gutters, city snow removal, so that it has the conveniences of urban living, the area is urban and the buildings and improvements do not qualify for tax exemption.

The Rices stress the following facts: the land involved, consisting of approximately 144 acres, was purchased by them in 1956; in addition to the 144 acres, they own 320 acres adjoining on the west and another 320 acres to the southwest which is separated from this unit by the space of one-half mile; approximately 64 acres of the 144 acres lies within the city limits of Maddock and their farmstead is situated therein; the buildings and improvements thereon consist of a house, machine shed, pole barn, quonset building, granaries, corrals, and fences; the land situated within the city limits is used for farmyard, crop, hay, and pasture; they own 70 head of cattle which they care for thereon; the farmstead prem-ises are bounded on the east by North Dakota Highway 30 (which is also known as Western Avenue of Maddock), on the north by a gravel-surfaced county highway, and on the south by a street of the City of Maddock which dead-ends at their property line; all of the platted lots of the City of Maddock adjoining the plaintiffs' premises lying to the west of Highway 30 are undeveloped premises without improved streets to the plaintiffs' premises; the premises in question have never been platted into lots or used for anything but agricultural purposes; the Rices have not sold any part of this land; other farmers have buildings and improvements situated on unplatted land within the City of Maddock which are not assessed; and a heavy growth of trees borders the farmstead on the north, east, and south, separating the farmstead from other portions of the city.

The respondents stress the following facts: the Rices' predecessors in title caused part of their farm to be platted as an addition to Maddock and, in doing so, set out the equivalent of a city block (unplatted) for the farm buildings; the southeastern portion of this unplatted block was sold by the Rices' predecessors for residential purposes; the Rices have a paved street (Western Avenue or Highway 30) in front of their house and a sidewalk leading to it, although the driveway to the yard is from another street; they have connected their facilities to the city sewer, water, and electric power plant; they have city street lights adjacent to their property along Western Avenue and along the county road adjacent to their property on the north; they have city curb and gutter on the eastern edge of their property; the city provides snow removal; and the city has assessed only those buildings and improvements on unplatted lots which lie within 150 feet of improved streets.

The mayor of the city testified that the house is the only building of the appellants that was assessed. It was apparently situated within 150 feet of Western Avenue.

The respondents also cite Eisenzimmer as authority for their position. They particularly emphasize the following portion of the opinon:

The term "agricultural lands," as used in this act, is descriptive of the land itself as a class, and is used merely to distinguish rural from urban or other properties. The first test is as to the character of the lands; and secondly, the nature of the structures—whether they are used or intended for use as a part of the farm plant.

In this case, the building in question, no doubt, was used as a part of petitioner's farm plant, but it was located on urban and not agricultural land. Had the legislature intended to exempt all buildings used in connection with the operation of a farm, regardless of location, it would have omitted the restriction in that respect.

Eisenzimmer v. Bell, supra, 32 N.W.2d at 893.

The buildings for which the Rices seek a tax exemption are located in the northeast corner of a 64-acre tract lying within the city limits of the City of Maddock. This tract is a part of a 784-acre farm, the balance of which lies outside the city limits. There is no question but that the 64-acre tract is an integral part of a farm unit and that the residence located on it is the home of the owner and operator of the farm. It is a farm building in the same sense that the home of any farm owner and operator located outside the city limits is a farm building. Under the exemption statute (§ 57–02–08, Subsection 15, N.D.C.C.) the basic question is whether this farm building is located on agricultural lands.

█ In Eisenzimmer this court held: "The term 'agricultural lands,' as used in this act, is descriptive of the land itself as a class, and is used merely to distinguish rural from urban or other properties." We held that a house located upon a lot within the platted portion of an incorporated city was not agricultural land despite the facts that the lot abutted unplatted land, owned by the same owner, which was used for farming purposes, and that the residence located upon the lot was the home of the farm owner. Our decision, in effect, held that the use to which land was put was not material to the issue of whether it was agricultural land if the land was situated within the platted portion of an organized municipality.

█ In this case we are asked to extend this rule to include all lands within the corporate limits of a municipality and thus bring unplatted lands within its compass. Such a holding would not fit within the rationale of Eisenzimmer. There we said that the filing of a plat was a "statutory dedication" of the platted land for municipal purposes and that because of this dedication the platted lands entered the class of urban land and were therefore not within the class of "agricultural lands" within the intendment of these words in the exemption statute.

When the original plat of the City of Devils Lake was filed, the statutory dedication of the streets, boulevards, alleys, and public places described therein by the owner, was in the nature of a grant. * * *

Eisenzimmer v. Bell, supra, 32 N.W.2d at 893.

This reasoning has no application to unplatted lands lying upon the periphery of a municipality which are an integral part of a farming tract lying partly within and partly without the corporate limits.

█ With respect to such lands there has been no "statutory dedication" of streets, boulevards, alleys, and public places or a division into small tracts which by themselves are unsuitable for agricultural use. In the absence of a transfer of lands to the classification of urban lands by such a dedication we are of the opinion that the

use to which such lands are put should be the determinant of the classification. Since the buildings for which tax exemption is sought are farm buildings located upon lands used for agricultural purposes, such buildings are farm buildings located upon "agricultural lands" within the meaning of the exemption statute and are therefore entitled to the statutory exemption.

Whether the appellants are entitled to a refund of the taxes paid on the buildings and improvements for the entire period claimed or only for the 1962 and 1963 tax years is another question.

The statute in effect at the time of filing of the application for abatement of assessments and refund of taxes read as follows:

57–23–03. Abatement of invalid, inequitable, or excessive taxes.—When the board of county commissioners is satisfied beyond a doubt that the assessment of real or personal property described in an application for abatement is invalid, inequitable, or unjust, the board, if application is filed on or before the first day of November in the year in which such taxes become delinquent, may abate any part thereof in excess of a just, fair, and equitable assessment if such application for correction complies with requirements of this chapter. Any person aggrieved by any decision of said board of county commissioners may appeal to the district court in the manner provided by law.

North Dakota Century Code.

■ Our court in 1957 construed this statute as a statute of limitation:

Section 57–2303, NDRC 1943 authorizing the board of county commissioners to grant applications for abatement of taxes where such taxes are found to be invalid, inequitable, or unjust, if such applications are filed with the board on or before November 1st

in the year in which such taxes become delinquent, is a statute of limitation, and applications filed after November 1st are barred from consideration.

Vetter v. Benson County (Syllabus 3), N.D., 81 N.W.2d 758, at 759.

■ In the instant case the application for abatement of taxes was dated April 22, 1963; was acted on by the City of Maddock on May 6, 1963; and was denied by the Board of County Commissioners of Benson County on June 4, 1963. Under the law in effect at the time of the filing of the application, the Rices are entitled to an abatement of the assessment and a refund of the taxes paid on the buildings and improvements for the year 1962. The abatement of the assessments and refund of the taxes paid for the previous years are barred by Section 57–23–03 of the North Dakota Century Code.

In 1963 our legislature added the following paragraph to Section 57–23–03:

An application for refund of taxes paid with respect to any part of an assessment abated under this section shall be granted only if such taxes were paid under proper protest as provided by section 57–20–20 and by compliance with the other provisions of that section.

The taxes for 1963 were paid under protest. It is not contended that proper protest has not been made. The Rices are therefore also entitled to an abatement of the assessment and a refund of the taxes paid on the buildings and improvements for 1963.

The judgment is therefore reversed and the case is remanded to the district court, with instructions to enter judgment in conformity with this opinion.

BURKE, C. J., and STRUTZ, TEIGEN, and KNUDSON, JJ., concur.