Paul VETTER, Respondent,

v.

BENSON COUNTY, a political subdivision of the State of North Dakota, the Board of County Commissioners of Benson County, and the Tax Commissioner of the State of North Dakota, Appellants.

John WOLF, Jr., Respondent,

v.

BENSON COUNTY, a political subdivision of the State of North Dakota, the Board of County Commissioners of Benson County, and the Tax Commissioner of the State of North Dakota, Appellants.

Peter J. LESMEISTER, Respondent,

v.

BENSON COUNTY, a political subdivision of the State of North Dakota, the Board of County Commissioners of Benson County, and the Tax Commissioner of the State of North Dakota, Appellants.

Nos. 7613–7615.

Supreme Court of North Dakota.

March 15, 1957.

M. C. Hiaasen, State's Atty., Minnewaukan, Leslie R. Burgum, Atty. Gen., for appellants.

Friederich & Ziegler, Rugby, for respondents.

SATHRE, Judge.

The three above entitled actions are appeals by the County Commissioners of Benson County, North Dakota from judgments of the district court of Benson County, reversing decisions of said county commissioners denying the applications of the claimants for abatement of real estate taxes for the year 1953, alleged to be illegal and void. For convenience the county commissioners will be referred to herein as appellants and the claimants as respondents.

The facts in the three cases are identical with the exception of variance in the description of the property of the several respondents and the amount of the taxes claimed to be illegal. It was stipulated that the three cases be consolidated for the purpose of trial and that they be tried together as one action but that in making the decision the district court would prepare three separate memorandum opinions applying the stipulated facts to the issues in each individual case.

The cases were tried to the court without a jury on stipulated facts made in open court which are substantially as follows:

The duly elected, qualified and acting assessor of Esmond Township in said Benson County duly and regularly assessed the real property of the respondents herein for 1953, and the assessment rolls as made by such assessor were duly recorded by him with the proper township clerk, and that pursuant to law the township board of equalization of Esmond Township held its regular meeting at the regular time and place as provided by law. The board of township supervisors sitting as a board of equalization proceeded to equalize the taxes in the assessment district of Esmond Township in Benson County, in which all of the land involved in the three consolidated actions are located. Insofar as the lands in question are concerned the township board of equalization determined to raise the assessment of the land of the respondents made by the assessor, and did so raise the same; but such board of equalization failed to notify respondents of its intention to raise the assessment of their lands as required by Section 57-0904, NDRC 1943 which is as follows:

"The township board of equalization shall ascertain whether or not all taxable property in its township has been properly placed upon the assessment list and duly valued by the assessor. In case any property, real or personal, shall have been omitted by inadvertence or otherwise, the board shall place the same upon the list with the true value thereof. The board shall proceed to correct the assessment so that each tract or lot of real property, and each article, parcel, or class of personal property, shall be entered on the assessment list at the true value thereof. The assessment of the property of any person shall not be raised until such person shall have been notified of the intent of the board to raise the same. All complaints and grievances of residents of the township shall be heard and decided by the board and it may make corrections as shall appear to be just. Complaints by non-residents with reference to the assessment of any property, real or personal, and complaints by others with reference to any assessment made after the meeting of the township board of equalization, shall be heard and determined by the county board of equalization."

Thereafter, and in accordance with the statutory provisions, the assessments were duly certified by the Clerk and returned to the County Auditor of Benson County, North Dakota; that after due and proper call and notice the Board of County Commissioners of Benson County met and sat as a county board of equalization; that at such meeting the said board in all things confirmed the action of Esmond Township Board sitting as a board of equalization

with reference to the raising of the assessments of the three respondents in these actions. The stipulation then sets out the name of each of the three respondents and opposite each name is the description of his land, and the one hundred percent value found and assessed by the township assessor, the assessment as raised by the township board, and the assessment as equalized by the county board.

On February 28, 1955 each of the said respondents filed applications for abatement and settlement of taxes in due form with the board of county commissioners of Benson County, North Dakota; copies of such application were marked respondents' Exhibits 1, 2, 3, and were admitted in evidence.

These applications are identical in form, except as to the description of the lands. They allege that the board of equalization of Esmond Township raised the assessment of the lands of the respondents without giving them notice as required by Section 57–0904, NDRC 1943; that the assessment as raised was higher than that of adjoining lands of similar quality, thereby causing unfair and inequitable tax burdens upon the respondents. The county commissioners, appellants, denied the applications of the respondents for abatement and entered an order accordingly. Thereafter the respondents appealed to the district court under provisions of Section 57–2303, NDRC 1943 which is as follows:

"When the board of county commissioners is satisfied beyond a doubt that the assessment of real or personal property described in an application for abatement is invalid, inequitable, or unjust, the board, if application is filed on or before the first day of November in the year in which such taxes become delinquent, may abate any part thereof in excess of a just, fair and equitable assessment if such application for correction complies with requirements of this chapter. Any person aggrieved by any decision of said board of county commissioners may appeal to the district court in the manner provided by law."

At the trial in the district court the following stipulation was entered into by the parties: "It is further stipulated and agreed by the attorneys for the claimants and appellants in these three actions, that they are abandoning as a ground for abatement the allegation that the assessments were unfair, inequitable and unjust."

The district court held that the board of equalization of Esmond Township was without jurisdiction to raise the assessment of the lands of the respondents above the valuation placed thereon by the assessor for the reason that such board had not notified such respondents of its intention to raise the assessments as required by section 57–0904, NDRC 1943, supra, that such notice was mandatory and jurisdictional, and that the taxes levied on the raised assessment were illegal and void. The district court accordingly reversed the decision of the county commissioners, and held that the claimants and respondents herein were entitled to abatement as demanded in their applications. Judgment was entered accordingly. Thereafter the county commissioners appealed from the judgment of the district court and demanded a trial de novo.

The appellants contend that the district court erred in the following particulars:

1. That the court erred in holding that the following provision of Section 57–0904, NDRC 1943 is mandatory rather than directory.

"The assessment of the property of any person shall not be raised until such person shall have been notified of the intent of the board to raise the same."

2. That the court erred in disregarding the provisions of Section 57–2303, NDRC 1943 which limits consideration by the county commissioners to applications for abatement of taxes filed on or before No-

vember 1st in the year the taxes sought to be abated become delinquent.

3. That the court erred in disregarding the stipulation entered into by the parties in which the respondents abandoned their claim and allegation that the taxes sought to be abated were inequitable, unjust and unfair.

We shall consider the foregoing propositions in the order stated:

The precise question whether the provision in Section 57–0904, supra, for notice to the property owner by the local board of equalization is mandatory or directory has not been before this court so far as our research discloses. However the general rule as established by judicial decisions in other states is to the effect that provisions essential to the acquirement of jurisdiction and provisions which are designed to force collection of a tax or divest the owner of his property for failure to pay the tax are mandatory, whereas the procedural steps which relate to the assessment, computation, and levy of the tax are directory.

In 50 Am.Jur. Statutes, Section 26, page 49, stated the rule is as follows:

"In construing a statute as mandatory or directory, the courts may take into consideration the consequences which would result from construing it as directory, and the consequences which would result from construing it as mandatory. For this purpose, the courts apply such general principles of construction as the rule that a statute should be given a construction which permits a reasonable operation, and a construction of statutes rendering them absurd, should be avoided.

A statutory provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result."

To the same effect is the following from 80 C.J.S., Shall, pp. 138, 139:

"The word 'shall' will be construed to mean 'may' and will be construed to be merely directory, when by giving it that construction no advantage is lost, no benefit is sacrificed, either to the public or to any individual, or no right is destroyed, or when no right or benefit to any one depends on its imperative use, or when the provision in which it is found does not confer a private right and the public interest does not demand a mandatory construction."

See also State ex rel. Sullivan v. District Court, 122 Mont. 1, 196 P.2d 452; McLendon v. Everett, 205 Ga. 713, 55 S.E.2d 119.

The State of Minnesota has a statute, Section 270.11, Subdivision 6, M.S.A., which is as follows:

"The commissioner of taxation shall raise or lower the assessed valuation of any real or personal property, including the power to raise or lower the assessed valuation of the real or personal property of any individual, copartnership, company, association, or corporation; provided, that before any such assessment against the property of any individual, copartnership, company, association, or corporation is so raised, notice of his intention to raise such assessed valuation and of the time and place at which a hearing thereon will be held shall be given to such person, by mail, addressed to him at his place of residence as the same appears upon the assessment book, at least five days before the day of such hearing."

The question as to whether the giving of the notice provided in said statute was directory or mandatory was before the supreme court of Minnesota in the case of Lindahl v. Minnesota, 244 Minn. 506, 70 N.W.2d 866, 872. We quote from the opinion:

"Finally, petitioner seeks to have the reassessment declared invalid because

he was not given notice by mail of the increase in the assessment as required by § 270.11, subd. 6. Again petitioner's objection is aimed at a directory or procedural step designed to produce and not to enforce the tax. The failure to give notice of the increase in the assessment was a mere irregularity of which petitioner cannot complain unless the tax sought to be collected was unfairly and unequally assessed. This petitioner has not shown. State v. Cudahy Packing Co., 103 Minn. 419, 115 N.W. 645, 1039. Furthermore, petitioner overlooks that proceedings to collect taxes are judicial in character. Notice is therefore sufficient if the property owner is given the opportunity to question the validity of the amount of the tax either before the amount is determined, or in subsequent proceedings for its enforcement. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473. Failure to give notice, under the judicial system, becomes crucial and material only when it is sought to bring the person or property into the court."

■ The second proposition requires a construction of that provision of Section 57–2303, NDRC 1943 which authorizes the board of county commissioners to abate taxes if application for abatement are filed on or before November 1st in the year in which the taxes become delinquent. Does this provision bar consideration of applications of abatement filed after November 1st? We think that Section 57–2303 must be considered together with Section 57–2402 which provides:

"At least twenty days before the second Tuesday in December of each year the county auditor of each county shall prepare a list of all delinquent real estate taxes, and shall post or cause to be posted one copy thereof in a conspicuous place in his office, and one copy thereof in each of at least four conspicuous public places, such as banks, public halls, or post offices, in different parts of the county, and shall retain a copy of such list which at all times shall be on file and open to public inspection in his office."

It clearly appears that the purpose of the quoted portion of Section 57–2303 is to place a definite date for filing applications for abatement so as to enable the county treasurer to give notice within the time provided by Section 57–2402 to owners of real estate subject to sale at the delinquent tax sale to be held in December. Said section 57–2303 is therefore a statute of limitation with which an applicant for abatement of taxes must comply. In the instant cases the applications for abatement were not filed on or before November 1, 1954, the year in which the taxes sought to be abated became delinquent, but were filed February 28, 1955, four months after the date required by Section 57–2303, supra. We hold therefore that since the applications of respondents for abatement were not filed within the time provided by the statute the board of county commissioners was without power to consider the applications.

■ The final question is as to the effect of the stipulation of the respondents abandoning their claims that the assessments as raised by the board of equalization of Esmond Township were unfair, inequitable and unjust. The legal effect of the stipulation was clearly to withdraw from consideration any claim that the assessment as made by the Esmond Township Board was unfair, inequitable and unjust. It must follow therefore that the taxes levied upon such assessment are regular and valid taxes.

The judgments of the district court are reversed and the cases remanded with directions to reinstate the order of the board of county commissioners denying the applications of the respondents.

GRIMSON, C. J., and MORRIS, BURKE and JOHNSON, JJ., concur.