[Civ. No. 11297. Third Dist. Jan. 3, 1967.]

THOMAS F. GAUMER et al., Plaintiffs and Respondents,
v. COUNTY OF TEHAMA, Defendant and Appellant.

Robert W. Trimble, District Attorney, for Defendant and Appellant.

Rawlins Coffman and Noel Watkins for Plaintiffs and Respondents.

PIERCE, P. J.—The County of Tehama has appealed from a judgment allowing recovery of real property taxes paid under protest.

This case concerns the question whether the failure of an assessor to inform an assessee of an increased assessment of over 25 percent on the assessee's land precludes collection of a tax based on the increase in assessed value. The trial court answered that question affirmatively. We agree with that holding. A statute requiring that such notice be given is mandatory. All administrative remedies having been exhausted, the taxpayers properly brought this action. Our opinion deals in detail with these declarations.

The statute with which the court is concerned is section 619 of the Revenue and Taxation Code. The section was first added to the code in 1961. It required the assessor, with the approval of the board of supervisors, to inform each assessee of real property on the assessment roll of the amount of any increase in the assessed value of such real property if the increase exceeded 10 percent of its assessed value on the preceding roll. The last paragraph of the section, however, as originally written provided that the failure of the assessor to inform the assessee would not affect the validity of any assessment or the validity of any taxes levied pursuant thereto. In short, the code section was *directory* with no penalty imposed against the taxing authority for a failure to comply with its terms.

The section was amended in 1963. (Stats. 1963, ch. 2109, p. 4386, effective Sept. 20, 1963.) It then read: "The assessor shall, upon or prior to completion of the local roll, either:

"(a) Inform the assessees of real property on the local secured roll of the amounts at which their respective properties have been or will be assessed thereon; or

"(b) Inform each assessee of real property on such roll of the amount of any increase in the assessed value of such real property if the increase exceeds 25 percent of its assessed value on the roll for the year immediately preceding, or if the increase exceeds some lesser amount when so specified by the board of supervisors.

"The information given by the assessor to the assessee pursuant to subdivisions (a) or (b) shall include a notification of hearings by the county board of equalization, which shall include the period during which assessment protests will be accepted and the place where they may be filed.

"This information *shall* be furnished by the assessor to the assessee by regular United States mail directed to him at his latest address known to the assessor. The board of supervisors of any county may, in addition, authorize the publication of this information in any newspaper of general circulation within the county.

"The failure of the assessee to *receive* this information shall *not* in any way affect the validity of any assessment or the validity of any taxes levied pursuant thereto." (Italics supplied.)

With this background we state the facts.

Plaintiffs, Thomas F. Gaumer, John E. Gaumer and James A. Gaumer, own 7,738 acres of land in Tehama County which were assessed on the 1963-1964 secured local roll (Rev. & Tax. Code, § 109) at $20,730. The next year (1964-1965) the property was assessed at $38,740, an 86 percent increase. The assessor at no time complied with the provisions of section 619 requiring notice to the assessee (nor, so far as the record shows, did he make any effort to do so). The first time plaintiffs had notice of the increased assessment was when they received their tax bill in November 1964. The plaintiffs appeared before the board of supervisors sitting as a board of *supervisors* on November 24, 1964, and presented the matter to it and the protest was denied. They paid their taxes under protest and brought this action to recover the increase. The county, as stated, has appealed from the court's judgment decreeing that the amount of taxes paid representing the excess in assessed valuation over the 1963-1964 valuations be refunded with interest at 4 percent.

Determination of the appeal rests upon the intent of the Legislature in amending section 619. Such "intent" to effectuate the purpose of the law is the fundamental rule of statutory construction. (*Select Base Materials* v. *Board of*

*Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672]; *Redevelopment Agency* v. *Malaki*, 216 Cal.App.2d 480 [31 Cal.Rptr. 92].) The last paragraph of section 619 as originally enacted in 1961 is clear. By its terms noncompliance with the preceding paragraphs did not invalidate the tax assessed. ■ A statute clear and unambiguous on its face does not permit interpretation to ascertain its meaning. (*Redevelopment Agency* v. *Malaki, supra,* pp. 487-488.)

■ Another rule of interpretation is that by amending an unambiguous statute the Legislature may be assumed to have intended to change the existing law. (*California Motor Transport Co.* v. *Public Utilities Com.*, 59 Cal.2d 270 [28 Cal.Rptr. 868, 379 P.2d 324]; *Learner Co.* v. *County of Alameda*, 234 Cal.App.2d 278, 284 [44 Cal.Rptr. 535].)[1] ■ The law as it existed in 1961 provided that failure to *give* notice as well as failure to *receive* notice did not invalidate the assessment or the taxes levied. The amendment in 1963 eliminated the ''validating'' provision pertaining to the *sending* of notice. It now reads that the failure of the assessee to *receive* notice shall not invalidate the assessment or taxes levied pursuant thereto. One must infer that by deletion of the phrase ''nor the failure of the assessor to so inform the assessee'' the Legislature intended the *sending* of notice to be a *sine qua non* upon which the validity of the assessment and tax based thereon depend.

■ Since section 619 requires notice, the failure to give notice means that that portion of the tax based on the increased assessment is void (*Huntley* v. *Board of Trustee*, 165 Cal. 298, 300-301 [131 P. 859]; see also *Birch* v. *Board of Supervisors*, 191 Cal. 235 [215 P. 903]) in the absence of any participation by the taxpayer in any equalization proceedings before the board of supervisors. (*De Luz Homes, Inc.* v. *County of San Diego*, 45 Cal.2d 546, 561 [290 P.2d 544].) We will explain this in more detail below.

■ The county contends that the trial court erred in holding that the taxpayers had exhausted their administrative remedies before bringing this action. It states that plaintiffs

---

[1]While this court has recognized another principle of interpretation—that a change in a statute may sometimes indicate a legislative intent to clarify the true meaning of a previous statute covering the same subject matter (see *Koenig* v. *Johnson*, 71 Cal.App.2d 739, 753 [163 P.2d 746])—that rule can have no possible application where, as here, the language of the 1961 statute was too explicit to permit interpretation and, on the other hand, the 1963 amendment with almost equal directness changes the law.

"thought they had found a loophole" and that they "were content to 'lay in the grass.' " These statements, under the circumstances of this case, have a resounding bureaucratic tintinnabulation which we find most distasteful—and most inappropriate. Plaintiffs, having been sent no notice, had no knowledge of the fact that the assessed valuation of their lands had been suddenly increased by $18,010 (86 percent).[2] Unexplained is why the assessor (presumably advised of all statutory changes in this field by the county's district attorney, learned in the law) had ignored both the directory provisions of the 1961 statute and the 1963 mandatory amendment. No inadvertence is claimed. (Of course, it would have made no difference as far as the validity of the assessment is concerned whether the failure to give notice was intentional or inadvertent.) When in November plaintiffs learned for the first time, by receipt of their tax statement, that this exceedingly large assessment increase had occurred, they sought relief immediately from the board of supervisors and were turned down. They then paid the tax under protest and brought this action on November 7, 1964.

The rule that administrative remedies must be exhausted is settled. (*City & County of San Francisco* v. *County of San Mateo,* 36 Cal.2d 196 [222 P.2d 860]; *Security-First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319 [217 P.2d 946].) The county argues that although the board of supervisors had already sat as a board of equalization on the 1964-1965 taxes before plaintiffs had notice of the increase they should have petitioned the board to call a special meeting to sit as a board of equalization, failing the calling of which they should have sought judicial relief by petition for an extraordinary writ. This plaintiffs were not required to do. The assessment was not merely an overvaluation. Because of the noncompliance with the notice provision it was void. (*Stafford* v. *Riverside County,* 155 Cal.App.2d 474 [318 P.2d 172]; *Parr-Richmond Industrial Corp.* v. *Boyd,* 43 Cal.2d 157, 164-165 [272 P.2d 16].) The code prescribes the times

---

[2]The court found (and the findings are not attacked) that no notice of the tax increase was given as required by law. Findings VIII and IX read as follows: "VIII That at no time did the Assessees receive notice of the aforesaid increase in assessed valuation on the local secured roll except upon receipt of the tax notices sent out in the fall of 1964; that said tax notices were received by the Assessees several months after the 1964 Board of Equalization of the County of Tehama had met and conducted its annual statutory session.

IX That at no time during the year 1964 did the Assesor give notifications of hearings by the County Board of Equalization to Assessees."

when the board of supervisors may meet as a board of equalization. (Rev. & Tax. Code, §§ 1603, 1604.) The failure of the assessor to give the notice required by law made it impossible for plaintiffs to apply for a hearing or appeal before the board at the prescribed times. Since that time had expired, it was also then beyond the power of the board of supervisors to sit as a board of equalization. (Rev. & Tax. Code, § 1603 (as it then read); *Birch* v. *Board of Supervisors, supra,* 191 Cal. at p. 237; *Huntley* v. *Board of Trustees, supra,* 165 Cal. 298, 300-301.) Thus, plaintiffs were denied any right of administrative equalization. Plaintiffs, as a matter of fact, *did* go before the supervisors as soon as they could and, as stated, were there denied relief.[3] Since the assessment was void and the taxes were properly paid under protest, this action was proper. (Rev. & Tax. Code, §§ 5136-5138.)

The judgment is affirmed.

Regan, J., concurred.

---

[3]It may be noted that in 1965 section 620 was added to the Revenue and Taxation Code. Under its terms, had it been in effect when these proceedings were brought and tried, it would have permitted plaintiffs to pay the tax under protest and seek relief before the board ''at its next annual meeting as an equalization board.'' The new section did not become effective until July 1, 1966. That was after this case was before this court on appeal; in fact, after the briefs had been written and filed. By then ''the next annual meeting'' after the invalid assessment had already been completed. We mention the new law, not only in the interests of completeness, but to demonstrate awareness by the Legislature that prior to its adoption no administrative remedy existed by which these plaintiffs could have sought relief other than the one they took—by bringing this action.