[Civ. No. 24387.   First Dist., Div. Two.   Apr. 11, 1968.]

TAMCO DEVELOPMENT COMPANY et al., Plaintiffs and Appellants, v. COUNTY OF DEL NORTE et al., Defendants and Respondents.

Janin, Morgan & Brenner and Eugene J. Brenner for Plaintiffs and Appellants.

William W. Speer, County Counsel, and Francis H. O'Neill for Defendants and Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and A. R. Early, Assistant County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

SHOEMAKER, P. J.—This is an appeal by plaintiffs Tamco Development Company and Andrew Tell from a summary judgment which held to be invalid the 1964-1965 tax assessment of plaintiffs' real property and directed the board of supervisors of defendant Del Norte County to reconvene as a board of equalization and equalize the assessment on plaintiffs' property.

The facts are substantially without dispute.

On the first Monday in March 1964, plaintiffs were the owners of real property in Del Norte County, which at the time of its purchase in 1963 was grazing land of an assessed value for the 1963-1964 tax year of $12,415. Before March 1964 they filed a subdivision map of the usable acreage, which produced approximately 1,524 lots, but as of the first Monday in March 1964 the property was virtually undeveloped save as to minor improvements made on a building thereon. Sometime prior to the first Monday in July 1964, the county assessor increased the assessed value of plaintiffs' property to $624,080, but failed to notify them of this increase as required by section 619 of the Revenue and Taxation Code, except that a notice pertaining to the parcel upon which the minor improvements had been made showed an increase based upon the value of the improvements but not in the value of the land itself, and further, did not notify plaintiffs of hearings to be held by the board of supervisors, sitting as a board of equalization, in July 1964, or of the time within which assessment protests could be made. The board of supervisors did sit as a board of equalization between the first and third Mondays of July 1964, but plaintiffs did not appear because of the lack of notice and had no knowledge of the increase from any source. On December 8, 1964 and January 25, 1965, plaintiffs appeared before the board of supervisors and protested, but the board refused to equalize or cancel the increase in the assessed value or to cancel the unpaid installment of taxes based on said increased value. Plaintiffs thereafter paid the increased taxes for the 1964-1965 tax year under protest and brought the present action to recover the moneys so paid.

Defendants' pleadings admitted that they had failed to give plaintiffs the notice provided for in section 619 of the Revenue and Taxation Code, and had assessed and taxed plaintiffs' property during the tax years 1963-1964 and 1964-1965 as alleged. They also admitted the lack of any substantial improvements to said property, the exhaustion of plaintiffs' remedies before the board of supervisors, and the

payment under protest of the taxes assessed for the year 1964-1965. However, defendants denied that their failure to comply with section 619 was wilful or that such omission had caused plaintiffs to believe that there was no need for them to attend the July hearings before the board of supervisors. They also denied that the assessment of plaintiffs' property for the year 1964-1965 was in any way improper or in excess of the true value of said property. As an affirmative defense, defendants alleged that plaintiffs were contributorily negligent in failing to examine the county tax rolls when they were delivered by the assessor to the county clerk on the first Monday of July 1964.

The pretrial conference order was generally in accord with the matters summarized above. It also provided, however, that when plaintiff Tell appeared before the board of supervisors on December 8, 1964, and sought equalization and cancellation of the 1964-1965 taxes against plaintiffs' property, he was advised by the board "and properly so" that the board had no power to sit as a board of equalization or to consider his tax protest on the merits.

Plaintiffs thereafter moved for summary judgment against defendant county and, in support thereof, filed the deposition of defendant Brickwedel, the affidavit of plaintiff Andrew Tell, and the declaration of Walter Prigmore.

The Brickwedel deposition was generally to the effect that the county assessor's office had based the 1964-1965 assessment of plaintiffs' property upon the sales prices which plaintiffs were asking for the lots within their subdivision, less 10 percent for leveling off said lots and an additional 10 percent "discount for cash" on the theory that plaintiffs would accept lower prices in the event their lots were sold for cash. In applying this assessment formula, Brickwedel did not take into consideration the fact that the lots were largely unimproved, although he was admittedly aware that no more than 20 percent of the improvements had been completed. Brickwedel was not aware that plaintiffs' selling prices were based upon improved lots. According to Brickwedel, the act of filing a subdivision map automatically changes the method of assessing the property involved, since it must then be assessed as lots rather than acreage. Thus, if the lots are worth more than the raw acreage, the assessed value of the property must be increased regardless of whether any improvements have been installed. Brickwedel admitted that with the exception of the one notice referred to in the complaint, the assessor's

office had not complied with section 619 and attributed this omission to inadvertence and overwork.

The Tell affidavit averred that the total cost of the improvements within the subdivision would exceed $800,000 and that on the first Monday in March 1964, less than $50,000 had been expended on the intended improvements; that neither the affiant nor anyone else connected with the property had ever received any notice of an increase in assessed value, with the exception of the one notice pertaining to the increased value of an old house plaintiffs had improved; that affiant and certain other representatives of plaintiffs met with defendant Brickwedel in May 1964 and discussed the subdividing of plaintiffs' property and the cost of the contemplated improvements; that Brickwedel stated that it was his practice to allocate the assessed value of the property to the individual parcels once a subdivision map had been filed and that plaintiffs would receive notice of any increase in assessment later in the month; that affiant was aware that the board of equalization was to meet in July 1964, but made no effort to attend because he relied on Brickwedel's statements and the one notice of increased value he had sent; that affiant was not aware that the assessed value of the property had risen approximately 4,000 percent until tax bills were received in October or November 1964.

The declaration of Walter Prigmore, the resident engineer in charge of constructing the improvements on plaintiffs' property, generally supported the statements contained in the affidavit of Tell.

A summary judgment entered on December 28, 1966, held that the 1964-1965 tax assessment of plaintiffs' property (with the exception of the one assessor's parcel as to which plaintiffs had been notified of the increase in assessed value) was void and directed the board of supervisors of defendant county to reconvene as a board of equalization, proceed with the hearing held and terminated in December 1964 and in good faith equalize the assessment on plaintiffs' property.

Plaintiffs' sole contention on appeal is that the trial court having properly determined the 1964-1965 tax assessment on their property was void, exceeded its authority by remanding said assessment to the board of supervisors for equalization and ought to have directed an immediate refund of the property taxes paid under protest. We agree.

The trial court's determination relative to the invalidity of the 1964-1965 assessment of plaintiffs' property was based

solely upon Revenue and Taxation Code, section 619, as amended in 1963, effective September 20, 1963.[1]

*Gaumer* v. *County of Tehama* (1967) 247 Cal.App.2d 548 [55 Cal.Rptr. 777], the only case directly dealing with the effect of an assessor's failure to comply with section 619, clearly establishes that the trial court ought not to have remanded the 1964-1965 assessment on their property to the board of supervisors for equalization. In the *Gaumer* case, which was decided approximately one week after the entry of judgment in the instant action, the court affirmed a judgment allowing recovery of all real property taxes based upon the increase in the assessed value of the property and held that the validity of the assessment and tax depended upon the sending of the notice required by section 619 and that the assessor's failure to comply with that section rendered void that portion of the tax based upon the increased assessment. The court, in so holding, pointed out that prior to the 1963 amendment to section 619, the last paragraph of that statute had provided that "Neither the failure of the assessee to receive this information nor the failure of the assessor to so inform the assessee shall in any way affect the validity of any assessment or the validity of any taxes levied pursuant thereto." (Stats. 1961, ch. 127, § 1, p. 1136.) The court stated, "The amendment in 1963 eliminated the 'validating' provision pertaining to the *sending* of notice. It now reads that the failure of the assessee to *receive* notice shall not invalidate the assessment or taxes levied pursuant thereto.

---

[1] The section in question then provided that "The assessor shall, upon or prior to completion of the local roll, either:

"(a) Inform the assessees of real property on the local secured roll of the amounts at which their respective properties have been or will be assessed thereon; or

"(b) Inform each assessee of real property on such roll of the amount of any increase in the assessed value of such real property if the increase exceeds 25 percent of its assessed value on the roll for the year immediately preceding, or if the increase exceeds some lesser amount when so specified by the board of supervisors.

"The information given by the assessor to the assessee pursuant to subdivisions (a) or (b) shall include a notification of hearings by the county board of equalization, which shall include the period during which assessment protests will be accepted and the place where they may be filed.

"This information shall be furnished by the assessor to the assessee by regular United States mail directed to him at his latest address known to the assessor. The board of supervisors of any county may, in addition, authorize the publication of this information in any newspaper of general circulation within the county.

"The failure of the assessee to receive this information shall not in any way affect the validity of any assessment or the validity of any taxes levied pursuant thereto." (Stats. 1963, ch. 2109, § 1, pp. 4386-4387.)

One must infer that by deletion of the phrase 'nor the failure of the assessor to so inform the assessee' the Legislature intended the *sending* of notice to be a *sine qua non* upon which the validity of the assessment and tax based thereon depend." (*Gaumer* v. *County of Tehama, supra,* at p. 551.)

The court in *Gaumer* discussed at length the proper remedy to be accorded an assessee who had not been given the notice required by section 619 and expressly rejected the county's contention that the plaintiffs therein were required, upon learning of the increase in their assessment, to petition the board to call a special meeting as a board of equalization and, in the event of the board's refusal to do so, to seek an extraordinary writ compelling such action. The court pointed out that the plaintiffs had not learned of the increase in their 1964-1965 assessment until after the board of supervisors had already sat as a board of equalization on the 1964-1965 taxes. The court further noted that plaintiffs had in fact applied to the board of supervisors for relief as soon as they learned of the increase but that their application had been denied. The court concluded that under these circumstances, plaintiffs had been denied any right to administrative equalization, since the assessor's failure to notify them of the increased assessment had prevented them from applying to the board of supervisors until after the expiration of the period within which said body was empowered to sit as a board of equalization under Revenue and Taxation Code, section 1603, as it then read. (Stats. 1939, ch. 154, § 1603, p. 1302, as amended Stats. 1939, ch. 1008, § 31, p. 2793.) It followed that plaintiffs' only remedy lay in the bringing of an action for recovery of the taxes paid under protest.

In reaching this conclusion, the *Gaumer* court commented upon the fact that section 620 (Stats. 1965, ch. 1878, § 1, p. 4331) had been added to the Revenue and Taxation Code in 1965, becoming effective July 1, 1966, and that said section, as it then read, would have authorized plaintiffs to pay the tax under protest and seek relief before the board of supervisors at its next annual meeting as an equalization board. However, the court deemed this remedy unavailable to plaintiffs because section 620 did not become effective until after the completion of the next annual meeting following the invalid assessment and also after plaintiffs' action had been brought, tried and briefed in the appellate court.

The instant case is factually indistinguishable, in every significant respect, from the *Gaumer* case. Here, as in *Gaumer,* the assessor's failure to comply with section 619 not only

invalidated the 1964-1965 assessment and taxes on plaintiffs' property but also prevented plaintiffs from appearing before the board of supervisors until after said body had already sat as a board of equalization on the 1964-1965 taxes. The plaintiffs in the instant case, just as the plaintiffs in *Gaumer*, thereafter applied to the board of supervisors at their earliest opportunity but were denied all relief.

The only factual distinction between the instant case and *Gaumer* is that in the case at bar, the effective date of section 620 of the Revenue and Taxation Code (July 1, 1966) occurred prior to the rendition of judgment by the trial court, whereas in *Gaumer*, that section did not become effective until the case was already pending in the appellate court. However, this distinction is of no value, since the section in question would merely have authorized plaintiffs to seek relief at the board of supervisors' next meeting as an equalization board and said meeting had occurred long before the effective date of section 620. Moreover, section 620 has since been amended (Stats. 1967, ch. 692, § 1, p. 2059) effective July 11, 1967, and in its present form would no longer appear available to plaintiffs for the reason that it now applies only to assessees whose property was not on the prior year's secured roll.

Defendant county has attempted to distinguish the *Gaumer* case on two grounds: (1) that when the plaintiffs therein learned of their increased assessment, they sought relief before the board of supervisors *as a board of supervisors* and did not specifically request, as did the plaintiffs herein, that said body convene as a board of equalization; and (2) that the plaintiffs in *Gaumer* were not shown to have made any changes in their property between the tax years 1963-1964 and 1964-1965 which would have justified the assessor in assigning it a greater value. Neither distinction is valid.

In the *Gaumer* case, as above noted, the court expressly rejected the county's contention that the plaintiffs therein were required to seek relief from the board of supervisors, sitting as a board of equalization, before bringing suit to recover the taxes paid under protest. The fact that the plaintiffs in the instant case did ask the board of supervisors to sit as a board of equalization and that such request was denied merely shows that they made an even greater attempt to exhaust their administrative remedies than did the plaintiffs in *Gaumer*.

Defendants' reliance upon the alleged unchanged condition of the property in the *Gaumer* case is likewise misplaced. In

the instant case, the court found that plaintiffs had not made a sufficient change in the physical condition of their property to estop them from claiming that the increased assessment was void by virtue of the assessor's failure to comply with section 619. This finding was amply supported by the pleadings, the pretrial conference order, and the sworn statements filed in support of plaintiffs' motion for summary judgment.

Plaintiffs conceded at the trial and likewise concede on appeal that since section 619 required the giving of notice only where the increase in the assessment exceeded 25 percent of the preceding year's assessment, they were entitled to a refund of only that portion of the 1964-1965 property taxes which exceeded a computation based upon a 25 percent increase in the 1964-1965 assessment over that of the preceding tax year.

The judgment is reversed insofar as it remands the 1964-1965 assessment on plaintiffs' property to the board of supervisors for equalization, and the trial court is directed to render judgment in favor of plaintiffs and against defendant county in an amount equal to that portion of plaintiffs' 1964-1965 property taxes which exceeded the allowable tax based upon a 25 percent increase in the 1964-1965 assessment on plaintiffs' property over the assessment for the preceding year.

Agee, J., and Taylor, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 5, 1968.