Dewey FISHER, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Allen Dewey FISHER, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Russell KIKER, Sr., Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Russell KIKER, Jr., Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Richard KNOPP, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Max NORTHROP, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Patrick PLUMMER, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Ernest STARK, Appellant and Appellee,

v.

GOLDEN VALLEY BOARD OF COUNTY COMMISSIONERS et al., Respondents and Appellants.

Civ. No. 9045.

Supreme Court of North Dakota.

Feb. 17, 1975.

Rolfstad, Winkjer, Suess, McKennett &
Kaiser, P. C., Williston, for appellees.

Orrin B. Lovell, State's Atty., Beach, for
appellant Golden Valley Board of County
Commissioners.

Bair, Brown & Kautzmann, Mandan, for appellants Golden Valley Board of County Commissioners and Lone Tree School District.

Kenneth M. Jakes, Sp. Asst. Atty. Gen., Bismarck, for the North Dakota State Tax Commissioner, appellant.

ERICKSTAD, Chief Justice.

In April of 1972 eight landowners of Golden Valley County filed separate applications for abatement and settlement of taxes with the County Auditor of Golden Valley County. After consideration and determination of the applications by the Board of County Commissioners, the landowners separately filed notices of appeal with the District Court of Golden Valley County. Upon consideration of the appeals, the trial court rendered its findings of fact, conclusions of law, and ordered judgment in favor of the landowners on April 22, 1974. It is from the judgment entered thereon dated April 24, 1974, that the Board of County Commissioners of Golden Valley, the North Dakota State Tax Commissioner, and the Lone Tree School District appeal to our Court.

Pertinent parts of the findings of fact, conclusions of law, and order for judgment of the trial court will aid us in discussing this case. We quote therefrom:

## "FINDINGS OF FACT

### "I.

"That the taxpayer-appellants own real property in the unorganized Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106), Golden Valley County, North Dakota.

### "II.

"That this action is the result of a timely appeal from the Golden Valley Board of County Commissioners hearing on the taxpayer's abatement petitions.

### "III.

"That the taxpayer-appellants paid their real estate taxes for the year 1971 under protest.

### "IV.

"That the Golden Valley Board of County Commissioners did not provide for the election of a district assessor to serve for the year 1971 in the unorganized Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106), situated in Golden Valley County, North Dakota.

### "V.

"That the Golden Valley Board of County Commissioners in the summer of 1971 informally designated the County Director of Tax Equalization to act as a district assessor for all unorganized territories in Golden Valley County, North Dakota.

### "VI.

"That the County Director of Tax Equalization who served as a district assessor in Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106) did not own real property or personal property, nor was he a registered voter in either of those unorganized Townships.

### "VII.

"That the County Director of Tax Equalization acting as the district assessor completed the assessment prior to June 1, 1971.

### "VIII.

"That the County Director of Tax Equalization acting as district assessor returned the assessment rolls for Township One Hundred Thirty-six (136) Range One Hundred

Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106) to the County Auditor after June 1, 1971, and before July 1, 1971, but he did not complete the assessor's oath.

"IX.

"That the County Director of Tax Equalization acting as the district assessor, did assess real property in units greater than one quarter section, but no real property was assessed in units greater than one full section.

"X.

"That in the year 1971, the County Director of Tax Equalization, acting as a local assessor for unorganized territories, made assessment increases exceeding 15% over the 1969 assessed valuation upon real property owned by taxpayer-appellants.

"XI.

"That the County Director of Tax Equalization acting as a district assessor on July 26—July 31, 1971, prepared on his own form a 'Notice of Increased Assessments' to taxpayers who own units of real property in Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106), whose assessments he had increased more than 15% over the 1969 assessments.

"XII.

"That the Notice of Increased Assessments was received by the taxpayers in Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106) in envelopes postmarked between the 29th and 31st days of July, 1971.

"XIII.

"That the Board of County Commissioners of Golden Valley County sitting as a County Board of Equalization met on the sixth day of July, 1971, and taking no action, adjourned, and reconvened on the 15th day of July 1971, when it equalized the assessed valuations for the unorganized townships. The Board again adjourned and reconvened on the 26th day of July, 1971, when sitting as the County Board of Equalization, they equalized the assessments for the County.

"XIV.

"That the taxpayers in Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106) were not sent nor did they receive written notice of assessment increase until after the Board of County Commissioners had met and adjourned as both the local board and County Board of Equalization.

"XV.

"That the Taxpayers in Township One Hundred Thirty-six (136) Range One Hundred Five (105) and Township One Hundred Thirty-six (136) Range One Hundred Six (106) did not receive any other notice, actual or constructive, of the assessment increase prior to the Local or County Boards of Equalization meetings.

"From the foregoing facts, the Court makes the following:

"CONCLUSIONS OF LAW

"I.

"That the North Dakota Century Code in 57–02–33 provides for proper election of a District Assessor and further sets forth the qualifications for any person eligible to become a District Assessor.

"II.

"That the failure of the Golden Valley Board of County Commissioners to provide

for a proper election of a district assessor or appoint a statutorily qualified district assessor did not invalidate the assessment as the County Director of Tax Equalization acting as a district assessor was a de facto assessor and could make a valid assessment.

## "III.

"That the North Dakota Century Code in 57–09–06 requires that the assessor be sworn on his oath when he returns the assessment rolls to the Auditor. The failure of the District Assessor to be sworn on his oath at the time he returned the assessment rolls to the County Auditor did not invalidate the assessment.

## "IV.

"That the North Dakota Century Code in 57–02–38 provides for the assessment of real property in units no larger than one quarter section. That the failure of the County Director of Tax Equalization acting as a district assessor in assessing real property in units no greater than one quarter section does not invalidate the assessment.

## "V.

"That the North Dakota Century Code in 57–12–09 provides that when any assessor or County Board of Equalization increases the assessed valuation on any lot or tract of land 15% more than the last assessment on that lot or tract of real estate, written notice shall be given to the property owner at his last known address.

## "VI.

"That the failure of the County Director of Tax Equalization acting as a local assessor to send notice of increase in 1971 when he increased a real property unit's assessed valuation 15% or more above the 1969 assessed valuation prior to the meeting of the Local Board of Equalization and The County Board of Equalization, invalidates that portion of the increase exceeding 15%.

## "VII.

"That the North Dakota Century Code in 57–12–02 grants to the County Commissioners the authority to act as the Local Board of Tax Equalization for all unorganized territories.

## "VIII.

"That the North Dakota Century Code in 57–12–05 sets forth the rules for equalizing individual assessments, which in the opinion of the Board, are returned above its true and full value, shall be reduced to said sum as believed to be the true and full value thereof.

## "IX.

"That the North Dakota Century Code in 57–12–06 provides that the County Board of Equalization may reduce the assessment provided that the owner of the property or the person to whom it was first assessed shall first appeal to the County Board of Equalization.

## "X.

"That the North Dakota Century Code in 57–12–06 further provides in sub-part 3 that an individual may appeal to the State Board of Equalization provided, however, that such person or persons have first appealed the assessment to the Local Equalization Board of the Taxing District and to the County Board of Equalization.

## "XI.

"That the Statutory Rights of appearance before the Local Board of Tax Equalization, the County Board of Tax Equalization and the State Board of Tax Equalization, are substantial rights and the loss of these statutory rights is a substantial prejudice to the taxpayer-appellants.

## "XII.

"That the County Director of Tax Equalization also acting as the Local Assessor was

not beyond the scope of his authority nor was the holding of both positions a denial of due process of law to the taxpayers.

"XIII.

"That the Golden Valley Board of County Commissioners acting as both the Local Board of Equalization and the County Board of Equalization for the unorganized territories is not unconstitutional as a denial of due process of law or a denial of equalization protection under the law.

"XIV.

"That the County Auditor shall recompute the assessments for the year 1971 voiding that portion of the assessments made by the County Director of Tax Equalization acting as a District Assessor, which on any real property unit exceed 15% over the 1969 assessed valuation and that the Treasurer of Golden Valley County, North Dakota, re-compute the tax based on the assessments returned in conformance with this judgment and refund to the taxpayer-appellants those portions paid under protest for taxes invalid under this decision.

"ORDER FOR JUDGMENT

"IT IS HEREBY ORDERED, that Judgment be entered in the foregoing action in accordance with the foregoing Findings of Fact and Conclusions of Law."

For purposes of clarity, we shall refer to the appellants on this appeal as the "Commissioners" and to the appellees on this appeal as the "landowners."

In the notice of appeal to our Court, the Commissioners assert that they:

" * * * appeal to the North Dakota Supreme Court from the final judgment entered in this action on the 24th day of April, 1974, whereby it was ordered, adjudged and decreed that the County Auditor of Golden Valley County recompute the assessments for the year 1971, voiding that portion of the assessments made

by the County Director of Tax Equalization acting as a District Assessor, which, on any real property unit, exceeded 15% over the 1969 assessed valuation, and whereby it was further ordered, adjudged and decreed, that the Treasurer of Golden Valley County, North Dakota, recompute the tax based on the assessments returned in conformance with the judgment and refund to the taxpayers-appellants those portions paid under protest for taxes invalid under said judgment."

The Commissioners contend that because no notice of a cross-appeal was filed and served by the landowners, the basic issue on this appeal is over the effect of the failure of the County to give the written notice of increased assessment to the owner of real estate as provided in § 57–12–09, N.D.C.C.

The statute in effect at that time reads:

"57–12–09. Written notice of increased assessment to real estate owner. —When any assessor or county board of equalization has increased the assessed valuation of any lot or tract of land by more than fifteen percent of the last assessment on any lot or tract of real estate on which no taxable improvements had been made since the last assessment of it, written notice of the amount of increase over the last assessment and the amount of the last assessment shall be given by him to the property owner at his last known address. The tax commissioner shall prescribe suitable forms for this notice and such notice shall be mailed at county expense." N.D.C.C.

Except for the descriptions of the property, the names of the landowners, and the amounts of taxes claimed to be illegal, all of the applications for abatement and settlement of taxes are similar. The pertinent provisions thereof we set forth herein at this time:

"That the assessment for the year 1971 is illegal, invalid and unjust for many reasons including, but not limited to the following:

"1) The County Commissioners failed to provide for the proper election of an Assessor nor did the County Commissioners appoint an Assessor as required by Section 57–02–33 of the North Dakota Century Code;

"2) The appointed Assessor failed to follow proper assessing procedures as required by Sections 57–02–34 and 57–02–11 of the North Dakota Century Code;

"3) The Assessor failed to assess property in units prescribed by Section 57–02–38 of the North Dakota Century Code;

"4). The Assessor or the County Board of Equalization failed to provide timely written notice as provided in Section 57–12–09 of the North Dakota Century Code;

"5) The County Commissioners failed to meet as a Board of Equalization for the unorganized townships in Golden Valley County as provided in Sections 57–12–01, 57–12–02, 57–12–04 and 57–12–05 of the North Dakota Century Code;

"6) The County Board of Commissioners has by its conduct precluded any remedy by the taxpayers as provided in Section 57–12–06 of the North Dakota Century Code;

"7) The Board of County Commissioners recognizing its deficiencies and having been given an opportunity to correct same authorized a re-assessment as provided in Section 57–14–08 and later in an unlawful act revoked that order;

"8) The Auditor failed to publish notice between the dates of May 1st and May 20th as provided in Section 57–23–02.

"9) The County Director of Tax Equalization has failed to fulfill his duties as prescribed in Section 11–10.1 of the North Dakota Century Code, and additionally has extended his function beyond acceptable bounds as explained by the office of the Attorney General.

"10) The use of the Township Board as the Board of Equalization as provided in Section 57–12–02 of the North Dakota Century Code is unconstitutional as a denial of due process.

"OR IN THE ALTERNATIVE,

If the assessment is declared validly conceived, the portion set out below as the difference between the assessed valuation and the proper assessed valuation is invalid, inequitable or unjust:

\* \* \* \* \* \*

"WHEREFORE applicant prays that the assessments be declared illegal, invalid and unjust or in the alternative the valuation be reduced to reflect the proper assessed valuation."

When this matter was considered by the trial court, it was apparently informally agreed by the parties that the trial court should first determine the issue of the legality of the assessment process and then only if necessary thereafter consider the alternative issue of the value of the property. The trial court determined the first issue, and it is from the judgment relative to that issue that this appeal is taken.

All parties to this litigation have at the time of oral argument in our Court stipulated that the merits of this appeal should be determined without a dismissal which otherwise might be required under Rule 54(b), N.D.R.Civ.P. We shall in this instance because of the three-year delay in perfecting this appeal comply with this stipulation. In so doing, we do not mean to lessen the importance of a Rule 54(b) order, nor do we mean to indicate that we will hereafter necessarily recognize this case as precedent for a departure from Rule 54(b) of the North Dakota Rules of Civil Procedure.

We conclude without discussion that the trial court's conclusions of law I through V are correct, not because we want

to encourage the departures from the statutes referred to in conclusions of law I through IV, but because we consider them an insufficient basis for setting the tax assessments aside. The notice requirement of Section 57–12–09, N.D.C.C., requires discussion.

■ Counsel do not strenuously assert that the notices informing the landowners that their tax assessments had been increased by more than 15 percent were sent in sufficient time to permit the landowners to be present on July 15, 1971, the day on which the Board of County Commissioners met as a local Board of Equalization for the unorganized townships or on July 26, 1971, the day on which the Board of County Commissioners met as the County Board of Equalization.

In any case, after reviewing paragraphs XI through XIV of the trial court's findings in light of the evidence and after applying Rule 52(a), N.D.R.Civ.P., we cannot say that they are clearly erroneous.

The first issue we must consider is whether it was essential that the notices be sent in sufficient time so that they could reasonably be expected to be received by the landowners prior to the meetings of the Board of County Commissioners as the local Board of Equalization and as the County Board of Equalization.

Pertinent are the following parts of § 57–12–06, N.D.C.C.:

"57–12–06. Rules to be followed in equalizing between assessment districts and in equalizing between property owners.—1. The rules prescribed in section 57–12–05 shall apply when the board of county commissioners is equalizing assessments between the several assessment and taxing districts in the county provided that in such case, except as otherwise provided in subsection 2 of this section, the board may raise or lower the valuation of classes of property only so as to equalize the assessments as between districts.

"2. Notwithstanding any other provision of this section:

"a. *The county board of equalization* after notice to the local board of equalization *may reduce the assessment on any separate piece or parcel of real estate* or on the assessment to any person of any particular item or classification of personal property even though such property was assessed in a city or township having a local board of equalization; *provided that the county board of equalization shall not have authority to reduce any such assessment unless the owner of the property or the person to whom it was assessed shall first appeal to the county board of equalization, either by appearing personally or by a representative before the board or by mail or other communication to the board, in which his reasons for asking for the reduction are made known to the board*; the proceedings of the board shall show the manner in which the appeal was made known to the board and the reasons for granting any reduction in any such assessment.

\*　　\*　　\*　　\*　　\*　　\*

"3. *The owner of any separate piece or parcel of real estate* that has been assessed and any person to whom any particular item or classification of personal property has been assessed *may appeal the assessment thereon to the state board of equalization* as provided in subdivision a of subsection 4 of section 57–13–04; *provided, however, that such owner or person has first appealed the assessment* to the local equalization board *of the taxing district in which the property was assessed and to the county board of equalization of the county in which the property was assessed*." N.D.C.C. [Emphasis added.]

In essence, the Commissioners contend that that part of the judgment supported by conclusion of law VI, relating to the notice to the taxpayers required by § 57–12–09, N.D.C.C., is erroneous.

In support of this contention, the Commissioners rely on Vetter v. Benson County, 81 N.W.2d 758 (N.D.1957), and upon Lindahl v. State, 244 Minn. 506, 70 N.W.2d 866 (1955). Let us consider *Vetter* at this time.

In *Vetter* the issue was over the effect of the township Board of Equalization's failure to notify the landowner of the Board's intention to raise the assessment of the landowner's property before raising the assessment. The pertinent part of the statute therein involved reads:

"The assessment of the property of any person shall not be raised until such person shall have been notified of the intent of the board to raise the same." Section 57–0904, N.D.R.C., 1943.

In *Vetter* the township Board of Equalization increased the assessment of real property of three landowners without first notifying them of the Board's intention to so do. The Board of County Commissioners, acting as the County Board of Equalization, affirmed that action and thereafter applications were made by three landowners for abatement and settlement of the taxes for that year. The Board denied the applications, and the landowners appealed to the district court.

In district court the landowners stipulated that they abandoned as a ground for abatement the allegation that the assessments were unfair, inequitable and unjust.

The trial court reversed the decision of the Board of County Commissioners and held that the township Board of Equalization was without jurisdiction to raise the assessments, having failed to serve the notice required by Section 57–0904, N.D.R.C., 1943.

Upon appeal this Court, apparently acting upon the belief that the landowners were not prejudiced by the failure to receive notice because of the fact that they abandoned as a ground for abatement the allegation that the assessments were unfair, inequitable and unjust, held that the notice provision of the statute was directory and not mandatory and, accordingly, reversed

the district court judgment and reinstated the decision of the Board of County Commissioners.

In so doing, the Court quoted with approval from 50 American Jurisprudence Statutes, Section 26, at page 49, as follows:

"§ 26. Consequences.—In construing a statute as mandatory or directory, the courts may take into consideration the consequences which would result from construing it as directory, and the consequences which would result from construing it as mandatory. For this purpose, the courts apply such general principles of construction as the rule that a statute should be given a construction which permits a reasonable operation, and a construction of statutes rendering them absurd, should be avoided. A statutory provision is generally regarded as directory where a failure of performance will result in no injury or prejudice to the substantial rights of interested persons, and as mandatory where such injury or prejudice will result."

The Court also quoted with approval from the Minnesota Supreme Court decision of Lindahl v. State, 244 Minn. 506, 70 N.W.2d 866, 872 (1955), as follows:

"Finally, petitioner seeks to have the reassessment declared invalid because he was not given notice by mail of the increase in the assessment as required by § 270.11, subd. 6. Again petitioner's objection is aimed at a directory or procedural step designed to produce and not to enforce the tax. The failure to give notice of the increase in the assessment was a mere irregularity of which petitioner cannot complain unless the tax sought to be collected was unfairly and unequally assessed. This petitioner has not shown. State v. Cudahy Packing Co., 103 Minn. 419, 115 N.W. 645, 1039. Furthermore, petitioner overlooks that proceedings to collect taxes are judicial in character. Notice is therefore sufficient if the property owner is given the opportunity to question the validity of the amount of the

tax either before the amount is determined, or in subsequent proceedings for its enforcement. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473. Failure to give notice, under the judicial system, becomes crucial and material only when it is sought to bring the person or the property into court." Vetter v. Benson County, 81 N.W.2d 758 (N.D.1957).

The landowners in the instant cases assert first of all that *Vetter* is distinguishable from the instant cases in that in *Vetter* the landowners stipulated away their allegation that the assessments were unfair, inequitable and unjust, whereas in the instant cases, they have reserved that issue for consideration as the alternative in their application for abatement. They secondly assert that the view expressed by the Supreme Court of Minnesota, and apparently adopted by this Court in *Vetter*, is a minority view as it relates to the landowner's right to receive the notice prescribed by statute.

The landowners refer us to the test for determining whether a statutory provision is mandatory or directory to Cooley on Taxation, 4th Edition, Volume 3, Section 1061:

"If the provision is mandatory it must be followed or the assessment will be invalid; but if it is merely directory the assessment is not necessarily invalid because of failure to observe the statute. *The test is whether the provision is for the benefit and protection of the individual taxpayer. If it is, the provision is mandatory.* On the other hand if the regulations are designed to secure order, system and dispatch in proceedings, and the rights of interested taxpayers cannot be injuriously affected, the provisions are merely directory. * * *" [Emphasis added.]

For more recent authority, the landowners refer us to Goodfriend v. Board of Appeals of Cook County, 18 Ill.App.3d 412, 305 N.E.2d 404 (1973); Keller v. Keith County, 179 Neb. 111, 136 N.W.2d 441 (1965);

Dierks Forests, Inc. v. Shell, 240 Ark. 966, 403 S.W.2d 83 (1966); Tamco Development Company v. County of Del Norte, 260 Cal. App.2d 929, 67 Cal.Rptr. 590 (1968); and Gaumer v. County of Tehama, 247 Cal. App.2d 548, 55 Cal.Rptr. 777 (1967).

Let us examine those cases.

In *Goodfriend*, the First District, Second Division, of the Appellate Court of Illinois was considering in 1973 whether the trial court had properly enjoined Cook County from collecting real estate taxes on property concerning which the county assessor had increased the assessment thereof in a nonquadrennial assessment year without notice to the owner and an opportunity to be heard relative to the increase contrary to Ill.Rev.Stat.1969, ch. 120, pars. 578, 579.

In concluding that the trial court had acted properly in enjoining the collection of the taxes, the Court said:

"Therefore, we hold that when the legislature enacted that in a non-quadrennial year the County Assessor of Cook County shall not increase an assessment ' * * * without previous notice to the owner and an opportunity to be heard,' it imposed a duty on the County Assessor, before he increases a property assessment for taxation, to give the taxpayer a notice and hearing within the common meaning of those terms. Notice to the property owner and an opportunity to be heard are jurisdictional; they must precede any change or reassessment. (Lindheimer v. Nelson, 369 Ill. 312, 316, 16 N.E.2d 734.) An assessment without notice and hearing is invalid. People ex rel. Edgar v. National Box Co., 248 Ill. 141, 93 N.E. 778." Goodfriend v. Board of Appeals of Cook County, 18 Ill.App.3d 412, 305 N.E.2d 404 (1973).

It is interesting to note that the taxpayers did not introduce any evidence in the proceedings before the trial court relative to the accuracy of the assessed valuations, but insisted that the increased assessments were illegal and void because they had not received the proper notice and hearing.

The decision does not indicate whether Illinois law permitted the taxpayers to commence an abatement proceeding such as our law permits. For those interested in this issue, we refer them to Section 675, Payment of taxes—Payments under protest, Revenue Act of 1939, S.H.A. ch. 120, § 482.

The Illinois Court further commented as follows:

"With the exception of actual or constructive fraud, instances which can be occasion for injunctive relief, the Board's administrative decisions concerning assessments are final. (People ex rel. Nordlund v. S. B. A. Company, 34 Ill.2d 373, 215 N.E.2d 233.) * * *" Goodfriend v. Board of Appeals of Cook County, 18 Ill.App.3d 412, 305 N.E.2d 404 (1973).

This finality is quite consistent with the finality we found to exist in the administrative board in Appeal of Johnson, 173 N.W.2d 475 (N.D.1970), when we said that we would not substitute our judgment as to the valuation of property for that of the duly constituted taxing authorities and that unless it was shown that those authorities acted arbitrarily or oppressively or unreasonably, or that there was not substantial evidence to support the decision, the decision would not be disturbed. *See* Syllabus ¶ 3, Appeal of Johnson, 173 N.W.2d 475, 476 (N.D.1970).

Let us next consider *Keller*, the decision rendered by the Supreme Court of Nebraska in 1965.

In discussing the statute therein involved, the Court said:

"Notice is required by section 77–1315 R.S.Supp., 1963, as follows: 'The county assessor shall before * * * filing (the assessment rolls with the county clerk), notify the record owner of every piece of real estate which has been assessed * * higher * * * than * * * the last previous assessment. * * * (The notice) shall * * * state the old and new assessed valuation * * * and the date of the convening of the board of

equalization.' " Keller v. Keith County, 179 Neb. 111, 136 N.W.2d 441 (1965).

The Supreme Court modified the judgment of the district court and sustained it as it related to the collection of 1963 taxes but reversed it as it related to the collection of 1964 taxes for the reason that it found that the taxpayers had waived their right to the notice involving the increase in the assessment for the 1964 taxes.

Pertinent is the following statement made by the Court:

"Notification pursuant to section 77–1315, R.S.Supp., 1963, is mandatory and collection of the tax on that part of an assessment raised without notice may be enjoined unless the taxpayer has waived the defect. * * *" Keller v. Keith County, 179 Neb. 111, 136 N.W.2d 441 (1965).

In *Dierks*, the Supreme Court of Arkansas in 1966 held that a taxpayer was entitled to have the taxing authority enjoined from collecting certain taxes for certain reasons including the noncompliance of the taxing authority with the statute requiring that the taxpayer be given written notice that its voluntary assessment had been raised, notwithstanding the taxpayer had actual notice of the intent of the taxing authorities to raise the assessed valuation of the property involved.

The Court seemed to tie in the taxpayer's right to a written notice of the increase in an assessment with its right to appeal to the Equalization Board. In conjunction with appeal to the Equalization Board, the Court said:

"The opportunity to appeal to the equalization board and thence to the courts is an essential part of the tract-by-tract procedure. Under the federal constitution the property owner is entitled at some point to notice and an opportunity to be heard on the fairness of his assessment, as compared with the assessment of other property. McGregor v. Hogan, 263 U.S. 234, 44 S.Ct. 50, 68 L.Ed. 282

(1923); Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908). * * *" Dierks Forests, Inc. v. Shell, 240 Ark. 966, 403 S.W.2d 83 (1966).

In *Tamco*, the First District, Division 2, of the Court of Appeals of the State of California found that the failure of the taxing authority to give notice of an increase in the assessment which exceeded 25 percent of the preceding year's assessment was fatal and justified the bringing of an action for recovery of the taxes paid under protest.

In discussing the effect of the failure of giving such a notice in light of the statute which existed at the time of Gaumer v. County of Tehama, 247 Cal.App.2d 548, 55 Cal.Rptr. 777 (1967), the Court in *Tamco*, referring to the Court in *Gaumer*, said:

"The court, in so holding, pointed out that prior to the 1963 amendment to section 619, the last paragraph of that statute had provided that 'Neither the failure of the assessee to receive this information nor the failure of the assessor to so inform the assessee shall in any way affect the validity of any assessment or the validity of any taxes levied pursuant thereto.' (Stats.1961, ch. 127, § 1, p. 1136.) The court stated, 'The amendment in 1963 eliminated the "validating" provision pertaining to the *sending* of notice. It now reads that the failure of the assessee to *receive* notice shall not invalidate the assessment or taxes levied pursuant thereto. One must infer that by deletion of the phrase "nor the failure of the assessor to so inform the assessee" the Legislature intended the *sending* of notice to be a *sine qua non* upon which the validity of the assessment and tax based thereon depend.' (Gaumer v. County of Tehama, supra, 247 Cal.App.2d at p. 551, at p. 779 of 55 Cal.Rptr.)" [Emphasis in original.] Tamco Development Company v. County of Del Norte, 260 Cal.App.2d 929, 67 Cal.Rptr. 590 (1968).

What the Court in *Tamco* was apparently saying was that when the assessor did not send the notice required by Section 619 of the Revenue and Taxation Code, the tax assessment was void and that an action could then be brought under Section 620 thereof to recover the taxes paid under protest. *See* West's Ann.Rev. & T.Code §§ 1 to 3350.

Having discussed *Gaumer* in conjunction with *Tamco*, we find it unnecessary to further consider *Gaumer*.

■ In light of the decision in Appeal of Johnson, *supra*, the direction which other courts have taken more recently in stressing the importance of notice and hearing before assessments of property may be increased beyond a certain percentage or amount, and the statutory requirement that a landowner who desires to appear before the State Board of Equalization must first appear before the local Board and the County Board of Equalization, which appearances would be difficult unless the landowners received prior notices, we hold that the failure to give the notices of increase in the assessment of the property in the instant cases was jurisdictional and thus that the increase in the assessment exceeding 15 percent of the previous assessment was illegal.

■ If the landowners are to receive any benefit from Section 57–12–06, N.D.C.C., the notice required by Section 57–12–09, N.D.C.C., must be sent a reasonable period of time in advance of the meetings of the local and County Board of Equalization. Since this was not done in these cases, the landowners were prejudiced. Anything which this Court said to the contrary in *Vetter* is hereby overruled.

This brings us to the second issue which is whether the trial court erred in not remanding the cases for a reassessment.

■ It is our conclusion in conjunction with this issue that the trial court was correct in not remanding the cases for reassessment. This is consistent with the approach taken by the Court of Appeals in *Tamco*, where it said:

"The judgment is reversed insofar as it remands the 1964–1965 assessment on plaintiffs' property to the board of supervisors for equalization, and the trial court is directed to render judgment in favor of plaintiffs and against defendant county in an amount equal to that portion of plaintiffs' 1964–1965 property taxes which exceeded the allowable tax based upon a 25 percent increase in the 1964–1965 assessment on plaintiffs' property over the assessment for the preceding year." Tamco Development Company v. County of Del Norte, 260 Cal.App.2d 929, 67 Cal.Rptr. 590 (1968).

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

PAULSON and PEDERSON, JJ., and WILLIAM M. BEEDE, District Judge, concur.

VOGEL and SAND, JJ., deeming themselves disqualified did not participate.

WILLIAM M. BEEDE, District Judge of the Fifth District, sat on this case.